IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,554

STATE OF KANSAS,
*Appellee*,

v.

ARCHIE JOSEPH PATRICK DOOLEY,
*Appellant*.

SYLLABUS BY THE COURT

1.

With its 2013 amendments to K.S.A. 22-3716, the Legislature established a graduated sanctioning scheme for probationers who violate the terms of their probation release, whereby first-time and second-time violators are ordinarily subject to intermediate sanctions, short of a complete probation revocation and the imposition of their original underlying prison term.

2.

The progression of graduated intermediate incarceration sanctions pursuant to K.S.A. 2013 Supp. 22-3716 is: (1) a confinement in jail of not more than 6 days per month in any 3 separate months during the probation term, not to exceed 18 days of total confinement and imposed in 2-day or 3-day consecutive periods; (2) a prison sanction of 120 days, which may be imposed once during the probation term; (3) a prison sanction of 180 days, which may be imposed once during the probation term; and (4) revocation of probation and the imposition of the original sentence or a lesser sentence.

3.

If a probationer absconds from supervision during the probation term, K.S.A. 2013 Supp. 22-3716(c)(8) authorizes the district court to bypass the graduated intermediate sanctions steps and proceed directly to revocation under K.S.A. 2013 Supp. 22-3716(c)(1)(E). The State must allege and prove by a preponderance of the evidence that the probationer absconded from supervision, and the district court must make the finding that the probationer absconded from supervision in order to invoke that exception to the intermediate sanctions.

4.

In order to invoke the K.S.A. 2013 Supp. 22-3716(c)(8) "absconds from supervision" exception to the requisite intermediate probation violation sanctions, the State must show, and the district court must find, that the probation violator engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process, such as intentionally avoiding probation supervision by hiding within or secretly leaving the jurisdiction.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 15, 2016. Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed August 10, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case is remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, argued the cause, and *Adam D. Stolte*, of the same office, was on the brief for appellant, and *Archie Dooley* was on a supplemental brief pro se.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Jamie L. Karasek*, deputy county attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.:  Archie Joseph Patrick Dooley petitions this court for review of the Court of Appeals' decision that affirmed the district court's revocation of his probation and ordered him to serve the original underlying prison term. Dooley argues that the district court erred in imposing the underlying prison term because the district court failed to base its decision on a statutory exception that would have authorized the court to bypass the intermediate probation violation sanctions mandated by K.S.A. 2013 Supp. 22-3716. Because the district court did not clarify the precise basis for imposing the underlying prison term and the journal entry is ambiguous on that point, we remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL OVERVIEW

Dooley pled nolo contendere to a crime emanating from his failure to register as an offender. The district court sentenced him to an underlying 120-month prison term but granted a dispositional departure to 36 months' probation with an assignment to the community corrections intensive supervision program.

On November 6, 2012 and January 24, 2013, Dooley agreed to modifications of his probation requiring him to serve two- and five-day jail terms as sanctions for changing his residence without permission. On March 5, 2013, the State filed a motion to revoke Dooley's probation alleging Dooley violated his probation by failing to report, moving without permission, and using drugs. The district court revoked and reinstated Dooley's probation with the additional conditions that he serve a 30-day sanction in county jail and enter a halfway house upon completion of his sanction. The district court also ordered Dooley to successfully complete the community corrections intensive supervision program. On August 5, 2013, Dooley agreed to a modification of his

3

probation requiring him to serve a two-day jail sanction for consuming illegal drugs on August 1, 2013.

On December 17, 2013, the State filed a second motion to revoke Dooley's probation. The State alleged the following violations: (1) On June 6, 2013, Dooley admitted using opiates and signed a voluntary admission form; (2) on July 8, 2013, Dooley admitted to using Adderall that was not prescribed; (3) on July 15, 2013, Dooley tested positive for and admitted using methamphetamine and opiates; (4) on July 18, 2013, Dooley tested positive for and admitted using methamphetamine and opiates; (5) on August 26, 2013, Dooley admitted using methamphetamine and Xanax and signed a voluntary admission form; (6) on December 6, 2013, Dooley failed to report to his intake meeting with community corrections; (7) Dooley failed to enter Oxford House (a halfway house); and (8) "[Dooley] has failed to report his whereabouts and has failed to report to community corrections having apparently absconded. [Dooley's] whereabouts are currently unknown." A bench warrant was issued and was served upon Dooley on January 14, 2014.

At the probation violation hearing, Dooley disputed the allegation that he failed to enter Oxford House and the State withdrew that allegation. Dooley entered an admission to the seven other allegations in the State's motion. With respect to the State's allegation that Dooley "apparently absconded," the district court asked Dooley, "The state alleges that you failed to report—you failed to report your whereabouts and failed to report to Community Corrections and that you absconded and they also note that your whereabouts were unknown. So, you understand those are the allegations contained in the motion?" Dooley answered, "Yes, Your Honor."

The court accepted Dooley's admissions and revoked Dooley's probation. Then, the district court stated, "We'll hear comment on disposition at this time." During this portion of the hearing, Dooley testified under oath that after he participated in a drug

4

treatment program, he was to participate in aftercare at Oxford House. In November 2013, approximately a week after he left treatment, Oxford House denied him admission because he only had $200 of the $250 entry fee. He did not report his whereabouts to community corrections as required because he "got scared" after he was denied admission. Sometime in January 2014, he turned himself in to community corrections.

During cross-examination, the State asked Dooley, "You said that the reason you absconded was because you were scared?" Dooley responded, "Well, yes." Dooley admitted missing an appointment with his corrections supervisor on December 6, 2013. Then, the State asked Dooley, "So, you were scared about [not getting into Oxford House] and that's why you didn't show up for the appointment?" Dooley replied, "Right." Dooley also admitted he did not contact community corrections to see if there were funds available or any help for him to get into Oxford House.

No other witnesses testified at the hearing. In arguing against imposition of sentence, Dooley's counsel stated:

"Now, the court does have a couple of options and this is new legislation we're all trying to get familiar with. Senate [*sic*] Bill 2170 allows for—well, the terms are dips, dunks. I'm not quite sure, maybe a dip is 120 days and a dunk is 180, but the court can impose those sanctions, either time frame, four months or six months, and place the defendant out on probation again. And, if the court chooses to further incarcerate him, we'd ask the court to follow the provisions in that senate [*sic*] bill and choose one of those two options.

". . . Whether the court wants to impose that [*sic*] Senate [*sic*] Bill 2170 sanctions, it's, you know, entirely discretionary with the court. So, if the court chooses to follow those, but we'd ask for another probation, Your honor."

Defense counsel's reference to Senate Bill 2170 appears to have been intended to reference House Bill 2170, the 2013 legislative amendment to K.S.A. 22-3716, the statute that enumerates the procedures for alleging and proving violations of probation and the authorized dispositions following probation violation. See L. 2013, ch. 76, § 5, eff. July 1, 2013. As discussed in more detail herein, K.S.A. 2013 Supp. 22-3716 sets out a graduated sanctioning scheme for probationers who violate the terms of their probation.

Under K.S.A. 2013 Supp. 22-3716's graduated sanctioning scheme, first-time and second-time probation violators are generally not subject to a complete probation revocation; instead, the district court is to impose intermediate sanctions for such violations. K.S.A. 2013 Supp. 22-3716(c)(1). The statute, however, provides that the district court may revoke probation and impose the original underlying prison term for any violator, even first-time violators, under certain specific circumstances, to-wit: (1) if the probationer commits a new felony or misdemeanor; (2) if the probationer "absconds from supervision"; or (3) "if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such [intermediate] sanction." K.S.A. 2013 Supp. 22-3716(c)(8)-(9).

The district court ordered Dooley to serve his original prison sentence. The journal entry of the hearing provided the following description of the violations: "Defendant admitted usage of Amphetamines, Defendant admitted usage of Methamphetamine, admitted usage of Opiates, admitted usage of Adderall, admitted usage to [*sic*] Xanax, failure to report to Oxford House in Dodge City, KS, failure to report to Dodge City Community Corrections; defendant absconded." The journal entry form contains a preprinted check box that reads: "Court revoked pursuant to K.S.A. 2013 Supp. 22-3716(c)(8) or (c)(9)—state reasons in comment box." The district court did not check this box and did not state any reasons in the comment box as to why the court was bypassing intermediate sanctions.

6

Dooley appealed to the Court of Appeals, where he contended that the district court did not have the authority under K.S.A. 2013 Supp. 22-3716 to completely revoke his probation. Specifically, Dooley argued that the district court had not first imposed the requisite intermediate sanctions and that it had not established a statutory exception that would authorize a bypass of those sanctions.

The Court of Appeals disagreed, reasoning that K.S.A. 2013 Supp. 22-3716 allows a district court to bypass intermediate sanctions when a defendant absconds from supervision while on probation. The panel recognized that the district court did not "specifically state at the hearing it was revoking probation because Dooley was an absconder." But the panel noted that the district court had accepted Dooley's stipulation that he was an absconder on the record, and the journal entry of the hearing states that Dooley's probation was being revoked in part because he was an absconder. *State v. Dooley*, No. 111,554, 2016 WL 1545172, at *3 (Kan. App. 2016) (unpublished opinion).

Dooley petitioned this court for review, arguing the Court of Appeals erred in finding he had absconded from supervision. He asserts that absent evidence that he absconded, the district court did not have the authority to bypass intermediate sanctions. He acknowledges his stipulation to "having apparently absconded" but argues this does not satisfy the State's burden of proving that he had, in a legal sense, absconded from supervision. This court granted Dooley's petition for review.

DISPOSITION FOLLOWING PROBATION VIOLATION UNDER K.S.A. 2013 SUPP. 22-3716

Dooley does not contest that he violated the terms of his probation. Instead, he argues that after accepting his admissions to violating his probation, the district court erred in ordering him to serve his entire underlying prison sentence. He contends that the 2013 amendments to K.S.A. 22-3716 eliminated a district court's unfettered discretion to

7

revoke probation and impose a probationer's underlying prison term upon any confirmed probation violation. Rather, a district court's authority upon a probation revocation is limited. The court must first exhaust prescribed intermediate sanctions, unless it finds the existence of a statutory exception that would permit the court to bypass the intermediate sanctions, all as prescribed in K.S.A. 2013 Supp. 22-3716.

We will first discuss the changes in the dispositional alternatives for a probation violation after the 2013 amendments to K.S.A. 22-3716 and the accompanying findings a district court must make. Then, we will consider the State's argument that the 2013 amendments do not apply to this case. Finally, we will review whether the district court made an adequate finding of the existence of a statutory exception that would permit the court to bypass the intermediate sanctions requirement of K.S.A. 2013 Supp. 22-3716.

*2013 Amendments to K.S.A. 22-3716*

*Standard of Review*

Our decision is grounded upon an interpretation of K.S.A. 2013 Supp. 22-3716. Interpretation of a statute is a question of law subject to unlimited review. *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008).

*Analysis*

Historically, a district court had broad discretion to enter a variety of sanctions once it determined that a defendant had violated the terms of probation. Prior to its amendment in 2013, K.S.A. 22-3716(b) provided: "Except as otherwise provided, if the violation is established, the court may continue or revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction and may require the defendant to serve the sentence imposed, or any lesser sentence

8

. . . ." We interpreted that language to mean that "[o]nce there [had] been evidence of a violation of the conditions on which probation was granted, revocation [was] in the sound discretion of the district court." *State v. Graham*, 272 Kan. 2, 4, 30 P.3d 310 (2001).

The Legislature substantially altered the district court's discretion in sanctioning a probation violation by a convicted felon with its 2013 amendments to K.S.A. 22-3716. Relevant here, the 2013 version of the probation revocation statute provides:

"(b)(4) Except as otherwise provided, if the defendant waives the right to a hearing and the sentencing court has not specifically withheld the authority from court services or community correctional services to impose sanctions, the following sanctions may be imposed without further order of the court:

(A) If the defendant was on probation at the time of the violation, the defendant's supervising court services officer, with the concurrence of the chief court services officer, may impose the violation sanctions as provided in subsection (c)(1)(B); and

(B) if the defendant was assigned to a community correctional services program at the time of the violation, the defendant's community corrections officer, with the concurrence of the community corrections director, may impose the violation sanctions as provided in subsection (c)(1)(B).

"(c)(1) Except as otherwise provided, the following violation sanctions may be imposed:

(A) Continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction;

(B) an intermediate sanction of confinement in jail for a total of not more than six days per month in any three separate months during the period of release supervision. The six days per month confinement may only be imposed as two-day or three-day consecutive periods, not to exceed 18 days of total confinement;

9

(C) if the violator already had at least one intermediate sanction imposed pursuant to subsection (c)(1)(B) related to the felony crime for which the original supervision was imposed, remanding the defendant to the custody of the secretary of corrections for a period of 120 days, subject to a reduction of up to 60 days in the discretion of the secretary. This sanction shall not be imposed more than once during the term of supervision;

(D) if the violator already had a sanction imposed pursuant to subsection (c)(1)(B) or (c)(1)(C) related to the felony crime for which the original supervision was imposed, remanding the defendant to the custody of the secretary of corrections for a period of 180 days, subject to a reduction of up to 90 days in the discretion of the secretary. This sanction shall not be imposed more than once during the term of supervision; or

(E) if the violator already had a sanction imposed pursuant to subsection (c)(1)(C) or (c)(1)(D) related to the felony crime for which the original supervision was imposed, revocation of the probation, assignment to a community corrections services program, suspension of sentence or nonprison sanction and requiring such violator to serve the sentence imposed, or any lesser sentence and, if imposition of sentence was suspended, imposition of any sentence which might originally have been imposed.

. . . .

(8) If the offender commits a new felony or misdemeanor or absconds from supervision while the offender is on probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction, the court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D).

(9) The court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant

10

to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D) if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2013 Supp. 22-3716.

The amended statute establishes a graduated sanctioning scheme for probationers who violate the terms of their probation. But the district court is not required to impose any incarceration. Subsection (c)(1)(A) continues the district court's discretion to continue or modify the release conditions of the probation. There appears to be no limit on the number of times a court may exercise the "continue or modify" option.

If the district court chooses to sanction with incarceration, subsection (c)(1)(B) provides the first step in the graduated sanctions scheme. The court can order the violator to serve 2-day or 3-day stints in jail, limited to 6 days per month in any 3 separate months of the probation period, with an outside limit of 18 days of total confinement in jail. This jail sanction might be imposed by court services or community correctional services, in addition to being available for the district court to impose.

If a probation violator has already had at least one jail sanction under (c)(1)(B), the court can impose the next step: sending the violator to prison for 120 days, subject to a discretionary reduction of up to 60 days by the secretary of corrections. K.S.A. 2013 Supp. 22-3716(c)(1)(C). The court can use this sanction step only once during the probation term.

Next, if a probation violator has already had a jail sanction imposed under subsection (c)(1)(B) or a 120-day prison sanction imposed under subsection (c)(1)(C), the court can send the violator to prison for 180 days, subject to the secretary's discretion to reduce the term up to 90 days. K.S.A. 2013 Supp. 22-3716(c)(1)(D). Again, this sanction shall not be imposed more than once during the term of supervision.

11

Finally, after a violator has been sanctioned with a stint in prison under subsection (c)(1)(C) or (c)(1)(D), the final step is to revoke the probation and require the violator to serve the original underlying sentence or any lesser sentence. K.S.A. 2013 Supp. 22-3716(c)(1)(E).

As noted above, the amended probation revocation statute also sets forth certain circumstances under which a district court may bypass the graduated sanctions steps and proceed directly to the revocation described in subsection (c)(1)(E). The bypass circumstances in K.S.A. 2013 Supp. 22-3716(c)(8) are the probationer's commission of a new felony or misdemeanor, or the probationer's absconding from supervision. The bypass circumstances in subsection (c)(9) require the district court to find and set forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by the intermediate sanction.

Here, prior to the probation revocation hearing at issue in this appeal, Dooley had received a first-step intermediate sanction through the community corrections program. See K.S.A. 2013 Supp. 22-3716(b)(4) (noting circumstances where community corrections officer may impose violation sanctions provided in K.S.A. 22-3716[c][1][B] and amendments thereto without further order of the court); see also K.S.A. 2017 Supp. 21-6604(t) (same). Specifically, Dooley had waived his right to a probation violation hearing, had admitted he violated probation on August 1, 2013, by consuming illegal drugs, and had agreed to a two-day sanction in county jail. Consequently, having served a jail sanction under K.S.A. 2013 Supp. 22-3716(c)(1)(B), the next step in Dooley's graduated intermediate sanctions program should have been a prison sanction of 120 days under K.S.A. 2013 Supp. 22-3716(c)(1)(C) or a prison sanction of 180 days under K.S.A. 2013 Supp. 22-3716(c)(1)(D).

12

Because the district court skipped the prison-sanction step of the statutorily required intermediate sanctions, it had to find that a bypass exception existed. To reiterate, the available exceptions under subsections (c)(8) and (9) were to find: Dooley committed a new felony or misdemeanor; Dooley absconded from supervision; the safety of members of the public would be jeopardized by imposing an intermediate prison sanction on Dooley; or Dooley's welfare would not be served by an intermediate prison sanction. Moreover, the reasons for finding the last two exceptions—public safety or offender welfare—had to be set forth with particularity. But before considering the district court's findings relative to the bypass exceptions, we pause to consider the State's newly raised argument that the 2013 amendments are not applicable to this appeal.

*Applicability of the 2013 Amendments*

For the first time in this case, the State argues in its supplemental brief to this court that the 2013 amendments to K.S.A. 22-3716 are not applicable here. It contends that the amendments do not preclude the district court from exercising unfettered discretion in sanctioning one of Dooley's probation violations. Specifically, the State points to Dooley's June 6, 2013, admission that he violated probation by using opiates. Because that violation occurred before the July 1, 2013, effective date of the statutory amendments, the State asserts that the district court could have imposed Dooley's underlying sentence for that preamendment violation, even if the district court was precluded from revoking his probation for the multiple violations occurring after July 1, 2013.

The argument, while creative, fails on more than one level. By not raising the issue in the Court of Appeals, the State is deemed to have waived and abandoned the claim in that court. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). Then, an issue abandoned in the Court of Appeals generally cannot be raised for the first time in

the Supreme Court. See *Snider v. American Family Mut. Ins. Co*., 297 Kan. 157, 161, 298 P.3d 1120 (2013).

The reason for that rule is illustrated here. By failing to raise the issue below, the State prevented the Court of Appeals from considering the State's argument in light of *State v. McGill,* 51 Kan. App. 2d 92, 340 P.3d 515 (2015), and *State v. Kyles*, No. 112,430, 2015 WL 5613265 (Kan. App. 2015) (unpublished opinion). *McGill* held that amendments in 2014 clarified that the Legislature intended for "the date of the defendant's probation violation [to] control[] whether the intermediate sanction provisions of K.S.A. 2013 Supp. 22-3716(c) apply." 51 Kan. App. 2d at 95. On the other hand, the panel in *Kyles* held that, despite the fact that two of the four alleged probation violations in that case involved acts that occurred prior to July 1, 2013, the acts were ongoing violations and, therefore, the 2013 amendments applied. 2015 WL 5613265, at *2.

In addition, Dooley was punished with a two-day jail sanction on August 5, 2013, for admitting the act of consuming illegal drugs on August 1, 2013. In other words, the graduated intermediate sanction steps were commenced *after* Dooley's admission to using opiates on June 6. One could argue that it would be an abuse of discretion to completely revoke probation for a prior admission to using drugs after commencing the graduated intermediate sanctions steps for a later admission.

In short, we find the State's unpreserved argument unavailing in this case.

*Invoking Bypass Exception*

The State's principal argument is that Dooley fit within the bypass provisions of K.S.A. 2013 Supp. 22-3716(c)(8) because he absconded from supervision. Before addressing that claim, however, we pause briefly to disabuse the State of the notion that a

14

district court can implicitly state its reasons for making the findings in K.S.A. 2013 Supp. 22-3716(c)(9) regarding public safety or violator welfare. That bypass subsection explicitly requires that "the court finds and *sets forth with particularity the reasons for finding* that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." (Emphasis added.)

In its brief to the Court of Appeals, the State suggested that the district court's comments about Dooley's inability to take advantage of several probation opportunities and the seriousness of his violations "could be construed to support [the K.S.A. 2013 22-3716(c)(9)] finding." We disagree. As a panel of the Court of Appeals stated in *State v. Miller*, 32 Kan. App. 2d 1099, 1102-03, 95 P.3d 127 (2004), "an implicit determination is not enough when particularized findings are required by statute." Instead, "'[w]hen something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" 32 Kan. App. 2d at 1102 (quoting *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 [1992]); see also *State v. McFeeters*, 52 Kan. App. 2d 45, 48-49, 362 P.3d 603 (2015) (implicit findings are insufficient under subsection [c][9]); *State v. Clutchey*, No. 114,566, 2016 WL 7178260, at *3 (Kan. App. 2016) (unpublished opinion) (probation revocation order lacking required particularity must be reversed). Here, the district court failed to even mention public safety or Dooley's welfare, much less set forth particular reasons those concepts supported an immediate revocation of probation. Consequently, the State cannot rely on K.S.A. 2013 Supp. 22-3716(c)(9).

If Dooley's probation revocation is to be affirmed, we must find that the district court employed the bypass provision in K.S.A. 2013 Supp. 22-3716(c)(8). The State does not allege that Dooley committed "a new felony or misdemeanor," so the district court had to rely on finding that Dooley "abscond[ed] from supervision while . . . on probation." K.S.A. 2013 Supp. 22-3716(c)(8). The Court of Appeals found that the district court had appropriately invoked the subsection (c)(8) bypass exception:

15

"At the hearing, the district court could have imposed an intermediate sanction under K.S.A. 2013 Supp. 22-3716(c)(1)(C) or (D) or, in the alternative, set forth its reasons for invoking an exception under K.S.A. 2013 Supp. 22-3716(c)(8) prior to ordering Dooley to serve his prison sentence. While the district court failed to specifically state at the hearing it was revoking probation because Dooley was an absconder, it did accept on the record Dooley's stipulation he was an absconder. The journal entry also states Dooley's probation was revoked in part because he was an absconder. When these statements are considered together, the district court did not abuse its discretion by revoking Dooley's probation without first imposing intermediate sanctions.

"We also find a decision by a recent panel of this court in *State v. Croslin,* No. 113,695, 2016 WL 758661, at *4 (Kan. App. 2016) (unpublished opinion), persuasive as it emphasized the importance of looking at the hearing transcripts and the journal entry to confirm what the district court ordered in determining whether the district court made the required findings that the defendant absconded. In *Croslin,* the district court included the finding in its journal entry just as the court did in this case." *Dooley*, 2016 WL 1545172, at *3."

We do not quibble with the assertion that it is important to look at the hearing transcripts and journal entry when trying to confirm whether the district court made the required finding to statutorily bypass intermediate sanctions, i.e., found that the violator absconded from supervision. Unfortunately, in this case, perusing those documents does not yield such a confirmation.

The revocation hearing transcript reveals that, when imposing Dooley's underlying sentence, the district court did not mention Dooley's admission to the court that he "apparently absconded" or the admission on cross-examination that he absconded because he was scared. Rather, after hearing from the State, Dooley, and defense counsel, the district court ordered Dooley to serve the remainder of his sentence in prison for the following reasons:

16

"This is a serious violation and you've been on probation before, you knew what was required of you, you were given several chances as has been outlined by counsel, and the court is going to require you to be taken—well, you're already in custody, but you're going to serve out the balance of your sentence with DOC."

Those comments are reminiscent of the rationale frequently expressed by district courts when exercising unfettered discretion in imposing sanctions for probation violations before July 1, 2013. Before the intermediate sanction scheme became effective, a probationer committing a serious violation of his or her probation release conditions after having multiple previous probation failures could expect that those circumstances would counsel the court against reinstating probation; a revocation of probation and order to serve the sentence originally imposed was the more likely result. Nevertheless, the point is that we simply cannot read the revocation hearing transcript as confirming that the district court was making the specific finding that Dooley absconded from supervision while on probation in order to invoke the K.S.A. 2013 Supp. 22-3716(c)(8) exception to the required intermediate prison sanction under subsections (c)(1)(C) or (D).

Likewise, the journal entry sends a mixed message. The Court of Appeals was persuaded by the inclusion of the words "defendant absconded" at the end of a list of probation violations that included five admissions of drug use and two failures to report. Curiously, one of the failure to report violations was described as "failure to report to Oxford House in Dodge City, KS." That allegation was specifically withdrawn by the State when it was contested by Dooley at the hearing, and, therefore, it should not have been journalized as a violation.

Notwithstanding that substantive error, the journal entry ambiguity arises from what the district court did not do. As noted above, the district court did not check the box next to the phrase "Court revoked pursuant to K.S.A. 2013 Supp. 22-3716(c)(8) . . . ."

17

The State would have us infer from the court's inclusion of the words "defendant absconded" under the journal entry section describing violations that the district court revoked Dooley's probation under the bypass provision of K.S.A. 2013 Supp. 22-3716(c)(8). Yet, when asked by the preprinted journal entry form to state that intent, the court did not do so.

Consequently, we are unable to confirm from the hearing transcript and the journal entry whether, procedurally, the district court invoked the bypass provisions of K.S.A. 2013 Supp. 22-3716(c)(8) and whether, factually, the court made the requisite finding that Dooley absconded from supervision as the condition precedent to invoking that bypass provision. Accordingly, we remand to the district court to clarify its ruling and to make appropriate findings as to whether it is invoking K.S.A. 2013 Supp. 22-3716(c)(8) and, if so, whether the State provided substantial competent evidence to support the condition precedent that Dooley absconded from supervision while on probation. See *State v. Huckey*, 51 Kan. App. 2d 451, 457, 348 P.3d 997 (2015) (State must allege and prove by preponderance of evidence that probationer absconded to allow court to avoid intermediate sanctions); cf. *State v. Raiburn*, 289 Kan. 319, 332, 212 P.3d 1029 (2009) (State has burden to allege and prove appellant absconded in order to invoke fugitive disentitlement doctrine).

Before concluding, we briefly discuss the State's request that we adopt a definition of "absconds from supervision" that is derived from outside sources and which is different than *Huckey*'s definition that was based on the Black's Law Dictionary definition of "abscond," to-wit: "'To depart secretly or suddenly, especially to avoid arrest, prosecution or service of process.'" 51 Kan. App. 2d at 455 (quoting Black's Law Dictionary 8 [10th ed. 2014]).

Specifically, the State asks us to utilize language from a North Carolina statute, N.C. Gen. Stat. § 15A-1343(b)(3a), that sets forth as a probation condition that the

18

probationer shall "[n]ot abscond by *willfully avoiding supervision* or by *willfully making the defendant's whereabouts unknown* to the supervising probation officer, if the defendant is placed on supervised probation." (Emphasis added.) The State believes that defining "absconds from supervision" as willfully avoiding supervision or willfully making the probationer's whereabouts unknown would facilitate the application of K.S.A. 2013 Supp. 22-3716(c)(8) in a manner that was intended by the Legislature. Alternatively, the State points to the Interstate Commission for Adult Offender Supervision Rule 1.101, available at https://www.interstatecompact.org/step-by-step/chapter/1/rule-1-101 (accessed July 16, 2018), which utilizes the phrase, "to be absent from the offender's approved place of residence or employment and *avoiding supervision.*" (Emphasis added.)

While the State's borrowed definitions might work well in a probation revocation scheme, the Legislature in Kansas chose not to define the phrase, "absconds from supervision," as it applies in K.S.A. 2013 Supp. 22-3716. When our Legislature does not define a term or phrase, we ascertain legislative intent by giving common words their ordinary meanings. *Cady v. Schroll,* 298 Kan. 731, 738, 317 P.3d 90 (2014). The Legislature should be well aware of that construction rule. Cf. 298 Kan. at 737 (presume Legislature intends statute to be interpreted according to standing judicial construction); *State v. Henning*, 289 Kan. 136, 144-45, 209 P.3d 711 (2009) (courts generally presume Legislature acts with full knowledge of existing law).

Ordinarily, then, we do not seek to fill a definitional void in our Kansas statutes with a definition plucked from a foreign source, unless such a definition is persuasive in ascertaining the common meaning of a common term. More frequently, dictionary definitions are good sources for such common meanings. *State v. Ward*, 307 Kan. 245, 260, 408 P.3d 954 (2018). For instance, Webster's Third New International Dictionary defines "abscond" as "1 : WITHDRAW, FLEE . . . 2 : to depart secretly : withdraw and hide oneself . . . *specif* : to evade the legal process of a court by hiding within or secretly

19

leaving its jurisdiction . . . *archaic* : CONCEAL." Webster's Third New Int'l Dictionary 6 (unabridged ed. 1971). In this instance, we are persuaded by a sister state's efforts to ascertain the common meaning of "absconds from supervision."

In *State v. Robbins*, 345 Or. 28, 31, 188 P.3d 262 (2008), the Oregon Supreme Court was required to apply an appellate practice rule, ORAP 8.05(3), addressing their fugitive disentitlement doctrine that permitted the dismissal of an appeal when the defendant "'escapes or absconds from custody or supervision.'" The lower court had dismissed the appeal, finding that the defendant absconded by missing a single appointment with her probation officer while the appeal was pending. *Robbins* stated the issue before the Supreme Court was "whether defendant 'abscond[ed] from . . . supervision.'" 345 Or. at 33. Given that the rule did not provide a definition for "abscond," *Robbins* looked at that term's definition in Webster's Third New International Dictionary and Black's Law Dictionary. That perusal led the court to conclude:

> "The words used to define 'abscond' all refer to some kind of conduct that a person engages in with a particular intent—'depart secretly,' 'withdraw . . . oneself,' 'hide oneself,' 'evade,' 'avoid.' *For a person to 'abscond,' then, it is not sufficient that the person simply engage in some course of action (or inaction); the person must do so with the conscious intent to hide from or otherwise evade legal process*." (Emphasis added.) 345 Or. at 33.

*Robbins* recognized that "failure to comply with the supervision requirements of probation may justify a determination that a defendant has absconded." 345 Or. at 36. But the court also noted that the definition of "abscond" showed that the purpose behind the defendant's actions are key. If a violator's acts show intent "to evade probation supervision because the defendant hid or secretly left the jurisdiction or because a pattern of violations permits the inference that the defendant is intentionally evading the legal process," then the defendant has absconded from supervision. 345 Or. at 37.

20

We are persuaded to adopt that concept with respect to the phrase "absconds from supervision" in K.S.A. 2013 Supp. 22-3716(c)(8). Relying on ordinary dictionary meanings, the State must show that the probation violator engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process. 345 Or. at 33. Evading the legal process of the court includes the offender's conduct in intentionally avoiding probation supervision, for example, by intentionally avoiding detection by one's probation officer. In determining whether an offender has "abscond[ed] from supervision," district courts must consider whether the offender's

> "acts show the intent that inheres in the definitions of 'abscond'—not simply that the [offender] failed to attend one meeting with a probation officer or could not be located for a brief period of time, but that the [offender] sought to 'evade the legal process of a court by hiding within or secretly leaving the jurisdiction.'" 345 Or. at 36 (quoting Webster's Third New Int'l Dictionary 6).

Because no one involved in the probation revocation hearing was apparently applying the correct legal test for determining whether Dooley absconded from supervision, we reject the Court of Appeals' holding that Dooley stipulated to being an absconder under K.S.A. 2013 Supp. 22-3716(c)(8). Moreover, on remand, the district court can use Dooley's stipulations to the underlying facts, e.g., Dooley's agreement that he failed to report to community corrections or failed to report his whereabouts. But the determination of whether the State proved that Dooley absconded from supervision must be determined by the district court.

*Conclusion and Directions*

We affirm the district court's ruling that Dooley violated the terms of his probation. We reverse and remand for further proceedings concerning the revocation of probation and imposition of the original underlying sentence. The district court is directed to either impose an intermediate sanction, as authorized by K.S.A. 2013 Supp.

21

22-3716(c)(1)(C) or (D), or to make the finding that it is invoking the bypass provision of K.S.A. 2013 Supp. 22-3716(c)(8) based on a finding, supported by substantial competent evidence, that Dooley absconded from supervision.

Reversed and remanded with directions.