NOT DESIGNATED FOR PUBLICATION

Nos. 119,279
119,280

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TARIQ H. SHAH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed April 19, 2019. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER, J., and STUTZMAN, S.J.

PER CURIAM:  Tariq H. Shah appeals from the revocation of his probation in Sedgwick County case Nos. 16CR2379 and 16CR2562. He argues that the trial court erred because substantial competent evidence does not support that he committed the new crimes of burglary and theft. Because we disagree, we affirm the revocation of Shah's probation in both of his cases.

1

Below, Shah entered into a plea agreement where he pled guilty to theft in No. 16CR2379 and to violating the Kansas Offender Registration Act in No. 16CR2562. For his 16CR2562 case, the trial court sentenced him to an underlying term of 19 months' imprisonment followed by 24 months' postrelease supervision, with a departure to 24 months' probation. For his 16CR2379 conviction, the trial court sentenced him to an underlying term of 17 months' imprisonment followed by 12 months' postrelease supervision, with a departure to 12 months' probation. The trial court ordered that Shah's sentences run consecutive.

On July 31, 2017, the State moved to revoke Shah's probation in both 16CR2379 and 16CR2562. The State alleged that Shah had committed burglary, and other violations, while on probation.

The trial court held a hearing on Shah's alleged probation violations. At the hearing, Linda Edwards, Shah's ex-girlfriend, and Judith Yost, the motel manager where Shah was staying, and Shah testified.

Edwards explained that when she came home on July 9, 2017, she noticed that her back door was open and that the urn containing the ashes of her recently deceased teenaged son was missing. Edwards called the police. Once the police arrived at her house, she told them that she suspected that Shah had stolen the urn because he knew the urn was of great value to her. Edwards testified that the police directed her to call Shah to confront him about the missing urn on speaker phone. Edwards explained that during the call, Shah told her that if she would marry him or "if the person holding the urn would receive money," she would get the urn back. Edwards further explained that after Shah's arrest, Shah called her from jail. During those phone calls, Shah still asserted that she could get her son's urn back if she married him or paid him money.

2

Recordings of the phone calls Shah placed from the jail were admitted into evidence. Because of Shah's actions, Edwards obtained a protection from stalking order against Shah.

Yost testified that Shah had been staying in the motel she managed in the summer of 2017. She testified that one day Shah asked her to hold onto a bag. According to Yost, Shah told her that he would pay her $10 if she held on to the bag for him. She explained that she did not look into the bag until 10 days had passed, at which point she discovered the bag contained an urn. Yost testified that "[b]eside the urn was a big plastic baggie [with] a white substance." Although she was unsure what name was on the urn, Yost testified that there was a name, birthdate, and death date on the urn. Because she believed that Shah "was trying to set [her] up, [she] took the bag and everything that was in the bag and put it back in [Shah's] room."

Yost explained that Shah stayed at her motel until he was arrested. She testified that after Shah's arrest, she was unable to find the urn in his room. Yet, she explained that a few days following Shah's arrest, she happened upon the urn and the ashes when walking by a shed near the motel. Upon finding the items, she called Edwards, who had already contacted her about her son's missing urn, and returned the items to Edwards.

Shah denied breaking into Edwards' house and stealing the urn. Shah asserted that the situation with the urn was a misunderstanding. He testified that during his phone calls with Edwards, he was merely repeating what Pakistani "black magic people" had told him about the urn. He testified that the search for the urn would have been easier if he and Edwards "were married to each other" because then "legally[,] he would have been obliged to [search for the urn]." Shah admitted to staying at the motel Yost managed and giving a bag to Yost. But he denied that the urn was inside the bag. He also asserted that he was being framed by Edwards because "she did not want to marry him" because "he was a Muslim" and because of his "jail problems."

3

Based on the preceding evidence, the trial court found that a preponderance of the evidence supported that Shah committed the crimes of burglary and theft while on probation. Next, despite Shah's request that the trial court impose intermediate sanctions, the trial court revoked Shah's probation in both 16CR2379 and 16CR2562. The trial court then imposed Shah's original underlying sentences in both cases.

On appeal, Shah's sole argument is that the trial court erred when it found that a preponderance of the evidence supported that he committed the new crimes of burglary and theft on probation. He contends that the trial court should have accepted his testimony about being set up. Based on this contention, Shah argues that the trial court should have imposed intermediate sanctions in both his 16CR2379 and 16CR2562 cases.

We review the trial court's finding that a defendant committed a probation violation for substantial evidence. See *State v. Dooley*, 308 Kan. 641, 655, 423 P.3d 469 (2018); *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]'" 38 Kan. App. 2d at 315. When a defendant challenges the trial court's finding concerning the commission of a new crime, we are concerned only whether the preponderance of the evidence supports that the defendant committed the new crime; the defendant need not be convicted of the new crime for this court to affirm the revocation of the defendant's probation. See 38 Kan. App. 2d at 315-16.

We review the trial court's ultimate decision to revoke the defendant's probation for an abuse of discretion. A trial court abuses its discretion if no reasonable person would have reached the same result as the trial court. 38 Kan. App. 2d at 316.

Here, it is readily apparent that substantial evidence supported the trial court's finding that the State proved Shah committed burglary and theft by a preponderance of the evidence. In summary, the evidence showed that somebody broke into Edwards' house and stole her deceased son's urn. When Edwards called Shah, he told her he could help her find the urn if she married him or gave the person who took the urn money. Shah also made these statements during the phone calls he placed from jail. Meanwhile, Yost discovered the urn in a bag that Shah had given her to watch. And after Shah had been arrested for burglary and theft, Yost discovered the urn by a shed outside the motel.

Clearly, based on the preceding facts, a reasonable person could believe that Shah burglarized Edwards' house and stole the urn. Shah's contention that the trial court should have accepted his testimony as truth is unpersuasive not only because his testimony was incredible, but also because this court does not reweigh the evidence on appeal. See *State v. McFeeters*, 52 Kan. App. 2d 45, 48, 362 P.3d 603 (2015).

As a result, we conclude that the trial court correctly concluded that a preponderance of the evidence supported that Shah committed the new crimes of burglary and theft while on probation. In turn, we hold that the trial court did not abuse its discretion by revoking Shah's probation in 16CR2379 and 16CR2562 without imposing intermediate sanctions.

Affirmed.