*James Miller v. State of Maryland*, No. 2097, September Term, 2019.  Opinion by Fader, C.J.

**SENTENCING AND PUNISHMENT—PROBATION AND RELATED DISPOSITIONS—REVOCATION**

Defendant's failure to comply with terms of probation that required him to make child support payments or, if he could not do so, provide copies of job applications on a weekly basis did not constitute "absconding," and therefore were technical violations of probation for purposes of § 6-223 of the Criminal Procedure Article (2018 Repl.; 2020 Supp.).

Circuit Court for Wicomico County
Case No. 22-K-15-000518

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2097

September Term, 2019

_____

JAMES MILLER

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Beachley,
Wilner, Alan M.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Fader, C.J.
_____

Filed: February 26, 2021

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

As conditions of his probation pursuant to a conviction for constructive criminal contempt for failing to pay child support, James Miller, the appellant, had been ordered to: (1) pay child support, including arrears, on a monthly basis; and (2) if unable to pay child support, provide copies of ten job applications per week to Wicomico County Bureau of Support Enforcement (the "Bureau").[1] Mr. Miller failed to do either and was charged with violating the terms of his probation. Mr. Miller admitted to the violations but argued that they were "technical" for purposes of § 6-223 of the Criminal Procedure Article (2018 Repl.; 2020 Supp.), and therefore subject to the sentencing limitations in that statute, which the General Assembly enacted as part of the Justice Reinvestment Act ("JRA"). The State argued that the violations constituted "absconding" and were therefore not technical. The Circuit Court for Wicomico County agreed with the State and sentenced Mr. Miller to four years' imprisonment.

Mr. Miller filed an Application for Leave to Appeal, which this Court granted to address his contention that his sentence is illegal because his probation violations were technical. We hold that Mr. Miller's violations did not constitute absconding and therefore were technical for purposes of the JRA. Accordingly, we will vacate Mr. Miller's sentence and remand for resentencing.

---

[1] After Mr. Miller pleaded guilty, the Bureau of Support Enforcement was renamed the Office of Child Support Enforcement. For consistency, we will refer to the office as the Bureau.

# BACKGROUND

In 2016, Mr. Miller pleaded guilty to one count of constructive criminal contempt for failing to pay child support in the Circuit Court for Wicomico County. The court sentenced him to five years' imprisonment, with all but 12 months suspended in lieu of 36 months' probation to be supervised by the Bureau. The court imposed the following conditions of probation:

> ORDERED, that upon his release, [Mr. Miller] shall be placed on thirty-six (36) months of supervised probation, to be supervised by the [Bureau], during which time he is to make full and timely payments on the support obligation owed . . . at the rate of $233.00 per month as well as an additional $50.00 per month on the support arrearage owed until all arrearages are paid in full; and it is further

> ORDERED, that if, during any portion of the supervised probationary period, [Mr. Miller] is unable to pay the court ordered arrearage payment in full, he must submit copies of ten (10) different verifiable job applications per week to his supervising agent at [the Bureau] by 4:00 P.M. on Friday of each week until he is able to make the court ordered payment; and it is further

> ORDERED, that any failure to comply with the conditions of this probation as set forth may result in violation of probation and revocation of the suspended sentence.

> ORDERED, that [Mr. Miller] shall keep his supervising agent at the Bureau updated and informed of his current address, work status and the name and address of any employer.

In March 2018, the State filed a Petition for Violation of Probation, alleging, in pertinent part, that Mr. Miller had violated his probation by failing to make a single child support payment on the arrearage and by failing to submit copies of any job applications during the entire period of his probation. At the violation of probation hearing, the State argued that Mr. Miller's failure to pay child support or to provide copies of job applications

were non-technical violations "on the theory that those [violations] constitute an absconding from probation[.]" Mr. Miller did not concede that his violations constituted non-technical violations. His counsel explained that although Mr. Miller had not paid child support or submitted the required job applications, the defense had insufficient information as to whether Mr. Miller had been in contact with his supervising agent since 2016. The court found that Mr. Miller had violated the conditions of his probation, which the court revoked, but it deferred ruling on whether the violations were technical.

At sentencing, Mr. Miller argued that his failure to submit the required job applications was a technical violation. The State disagreed. Although the State acknowledged that the probation order did not require Mr. Miller to meet regularly with his probation officer, it argued that the requirement to submit job applications was the equivalent of required contact with his supervising agent, and that Mr. Miller's failure to submit the applications constituted absconding, a non-technical violation. The court agreed with the State and ruled that the requirement to submit job applications was "analogous to the normal probation order where [the defendant and probation officer] have to remain in contact. That's what allows the Bureau of Support Enforcement officer or worker to know that the Defendant is complying, that they are doing the things that they need to do, that there's contact there with them." The court therefore found that Mr. Miller's failure to comply with the requirement to submit job applications constituted absconding, a non-technical violation, and sentenced him to serve his four years of backup time.

**DISCUSSION**

In 2016, the General Assembly enacted the JRA, which significantly altered the law governing probation revocation. *See* 2016 Md. Laws, ch. 515; Crim. Proc. § 6-223. Before the enactment, upon finding a probation violation, a trial court "was authorized to 'impose any sentence that might have originally been imposed for the crime of which the probationer or defendant was convicted or pleaded nolo contendere.'" *Johnson v. State*, 247 Md. App 170, 184 (2020) (quoting Crim. Proc. § 6-223(d)(2) (2008 Repl., 2016 Supp.)).

The JRA established a category of "technical violations" of probation and provided presumptive limits on the sanctions that courts could impose for such violations. *State v. Alexander*, 467 Md. 600, 609 (2020). Doing so "was part of a larger effort to reduce the State's prison population and invest the resulting savings in treatment and recidivism-reducing alternatives to incarceration for low-level offenders." *Id.* (citing Revised Fiscal and Policy Note for Senate Bill 1005 (June 2, 2016)). The JRA defines a "technical violation" as any violation of probation that does not involve: "(1) an arrest or a summons issued by a commissioner on a statement of charges filed by a law enforcement officer; (2) a violation of a criminal prohibition other than a minor traffic offense; (3) a violation of a no-contact or stay-away order; or (4) absconding." Crim. Proc. § 1-101(q) (adopting the definition of "technical violation" set forth in § 6-101(m) of the Correctional Services Article (2017 Repl.)). The only one of these categories that the State contends applies to Mr. Miller is absconding, which is defined in § 6-101(b) of the Correctional Services

4

Article as "willfully evading supervision" and "does not include missing a single appointment with a supervising authority."

The JRA establishes "a rebuttable presumption that the limits on the period of incarceration that may be imposed for a technical violation . . . are applicable." Crim. Proc. § 6-223(e)(1). Those limits are 15 days' incarceration for a first technical violation, 30 days' incarceration for a second technical violation, and 45 days' incarceration for a third technical violation. Crim. Proc. § 6-223(d)(2)(i). "The presumption may be rebutted if the court finds and states on the record . . . that adhering" to the presumptive limits set forth in the statute "would create a risk to public safety, a victim, or a witness."[2] Crim. Proc. § 6-223(e)(2).

Mr. Miller contends that the circuit court erred as a matter of law in finding that his failure to provide ten job applications to his supervising agent on a regular basis constituted absconding. The State argues that the court did not err because the requirement to provide the job applications served as the mechanism by which Mr. Miller was to maintain contact with his probation officer, and his failure to comply therefore constituted evasion of supervision.

We ordinarily review a circuit court's decision to revoke probation for an abuse of discretion. *Brendoff v. State*, 242 Md. App. 90, 108 (2019). Issues of statutory interpretation, however, are questions of law, which we review without deference. *Id.*

---

[2] The court in this case did not make a finding that applying the presumptive limits applicable to Mr. Miller's violations would create a risk to public safety, a victim, or a witness.

5

"These two seemingly disparate standards of review are sometimes reconciled with the observation that it is an abuse of discretion for a court to base a decision on an incorrect legal standard." *Id*. (quoting *Rodriguez v. Cooper*, 458 Md. 425, 437 n.9 (2018)).

In *Brendoff*, we considered the meaning of "absconding" under § 6-101(b) of the Correctional Services Article in the context of an alleged probation violation resulting from a failure to complete drug treatment as a condition of probation. 242 Md. App. at 107-08. The State argued that the defendant had absconded from the supervision of two treatment facilities by leaving one facility and failing to attend therapy sessions at a second. *Id*. The defendant asserted that his failure to complete drug treatment did not equate to "absconding" for purposes of the statute, as there was no evidence that he had "failed to report to his probation agent or . . . keep his probation agent apprised of his whereabouts." *Id*. at 107.

In reviewing the legislative history of the JRA, we observed that the JRA had adopted the policy recommendations of the report of the Justice Reinvestment Coordinating Council based on three major findings. First, "[a]lmost 60 percent of all prison admissions represent failures of probation, parole, or mandatory release supervision, often for technical violations rather than a new criminal conviction." *Id*. at 116 (quoting the Justice Reinvestment Coordinating Council, *Final Report*, S.B. 602, Leg., Reg. Sess. at 19 (Md. 2015)) ("JRCC *Final Report*"). Second, increased lengths of prison stays were related to technical probation violators serving, on average, 31 months longer than other offenders sentenced directly to prison. *Id.* (quoting JRCC *Final Report* at 1, 8-9, 12). Third, "that Maryland's supervision resources and practices did not focus on serious and

violent offenders and that the [Division of Parole and Probation] did not have a standardized framework for responding to technical violations of conditions of probation[.]" *Id.* (citing JRCC *Final Report* at 1, 10-11, 19). Thus, the JRCC recommended the adoption of a category of "technical violations," using an incremental system of "non-custodial sanctions" prior to revocation as well as graduated incarceration periods based on the number of probation violations. *Id.* at 116-17 (citing JRCC *Final Report* at 19).

Based on the legislative history of the JRA, we determined that the General Assembly intended that this newly enacted sentencing system for technical violations apply in circumstances such as a failure to complete drug treatment, especially where the probationer makes the probation agent aware of his or her location and is responsive to the agent. *Id.* at 117-18. We concluded that a contrary interpretation would be at odds with the goal of reducing the number of probationers imprisoned for "missing a treatment appointment or failing a drug test." *Id.* at 118 (quoting JRCC *Final Report* at 19).

As to Mr. Brendoff's violations of probation, we determined as a preliminary issue that the circuit court had erred in identifying the drug treatment facilities as the "supervising authorities" for purposes of deciding whether the defendant had absconded. *Id.* at 122. Accordingly, we remanded the case for a determination of whether the defendant had willfully evaded the supervision of the Division of Parole and Probation, which was the supervising authority for the probation, as opposed to the drug treatment facilities. *Id.* We held that "when there is an allegation of a non-technical violation of

7

probation by 'absconding,'" the trial court must first determine "whether the probationer willfully evaded his or her supervising authority." *Id.*

In *Brendoff*, we did not reach the issue presented in this case, which is whether absconding includes the failure to comply with a term of probation that requires a probationer to provide a supervising authority with information evidencing compliance with another term of probation.[3] We noted, however, certain out-of-state cases interpreting the term "absconding" under their respective "Justice Reinvestment laws . . . which grew out of the same nationwide initiative" as Maryland's JRA. *Id.* at 119-20 n.22; *see, e.g.*, *State v. Melton*, 811 S.E.2d 678, 681 (N.C. App. 2018) (interpreting "absconding" under a JRA statute to include only situations where "a defendant . . . willfully makes his whereabouts unknown to his probation officer, and the probation officer is unable to contact the defendant"); *Legendre v. State*, 242 So. 3d 1028, 1030 (Ala. Crim. App. 2017) (explaining that a probation revocation statute authorizing the imposition of a sentence beyond statutory limits in the case of a probationer who "absconds" required evidence of "the concealment of oneself, especially in instances of evading legal process"); *State v. Dooley*, 423 P.3d 469, 479-80 (Kan. 2018) (holding that revoking probation for absconding, without first imposing graduated statutory sanctions, required proof that the probationer had "the conscious intent to hide from or otherwise evade the legal process");

---

[3] The Court of Appeals' decision in *State v. Alexander* also did not address the issue raised here. 467 Md. 600 (2020). In *Alexander*, the Court did not decide whether "the alleged violations of probation committed by Mr. Alexander – failure to pay restitution and missing a meeting with his probation officer – were considered technical violations" because the parties appear to have assumed that they were. *Id.* at 612.

*Hobson v. State*, 230 So. 3d 1096, 1099 (Miss. App. 2017) (interpreting a probation statute that defined "[a]bsconding from supervision" as "the failure of a probationer to report to his supervising officer for six or more consecutive months").

A common thread in the interpretations of "absconding" in each of these out-of-state cases is a required showing that the probationer had intentionally fled or failed to report to a supervisory agent to avoid detection and evade the legal process. We find these interpretations persuasive and consistent with the intent of the General Assembly in adopting the JRA, as discussed in *Brendoff*. Here, the State presented no evidence that Mr. Miller attempted to evade supervision by hiding or concealing himself to avoid detection. The terms of Mr. Miller's probation did not require him to meet with a supervisory agent on a regular basis, to report his whereabouts at any particular time, or even to report regularly regarding the status of his compliance with his other obligations under the order. And although the court had required Mr. Miller to "keep his supervising agent . . . updated and informed of his current address, work status and the name and address of any employer," the State did not allege that he failed to comply with that requirement. In short, the record contains no suggestion that Mr. Miller evaded supervision.

Instead, Mr. Miller's violation consisted of the failure to pay child support, including arrearages, or, in the alternative, to provide specific evidence of his attempts to obtain employment. The status of his actual compliance with these requirements was presumably readily ascertainable by the Bureau at any point. The State suggests that we should treat the obligation to provide the Bureau with copies of job applications as akin to

9

an obligation to meet regularly with his supervising agent, but it is not. There is a difference between failing to report or be available to a supervising authority so that the authority can determine whether a probationer is in compliance with terms of probation, on the one hand, and failing to comply with those terms, on the other. A simple example illustrates the difference. The probation order in this case could have required Mr. Miller to meet regularly with his supervising agent and to provide copies of job applications at those meetings. If Mr. Miller had attended those meetings regularly but failed to bring copies of any job applications, he would have violated the requirements of his probation, but he could hardly be said to have evaded supervision. Here, the probation order required Mr. Miller to provide copies of job applications as evidence of his attempts to secure employment so that he could meet his child support obligation. His failure to provide copies of the applications did not prevent the supervising agent from knowing where he was or how to contact him. Nor did it prevent the supervising agent from knowing whether Mr. Miller was complying with the obligations of the probation order. Mr. Miller's failure to submit the applications, combined with his failure to pay his outstanding child support arrearages, *was* the violation. Simply put, Mr. Miller's complete failure to abide by the applicable provisions of the probation order constituted a violation of the order—and a seemingly egregious violation at that—but it did not constitute absconding.[4]

---

[4] Nothing in this opinion should be understood to condone Mr. Miller's behavior or to minimize the significance of his violation. The General Assembly has sharply limited the sentences that can be imposed, absent a risk to public safety, for all but an enumerated list of probation violations, one of which is absconding. All we decide today is that Mr. Miller's violation does not constitute absconding.

On this point, we find *State v. Ford*, 134 P.3d 959 (Or. App. 2006), to be particularly instructive. In *Ford*, the court considered whether a probationer had "absconded" under a rule allowing for the dismissal of the appeal of a criminal defendant who "*escapes or absconds* from custody or supervision." *Id.* at 960 (quoting Or. R. App. Proc. 8.05) (emphasis added in *Ford*). The defendant was convicted of driving under the influence of intoxicating substances and sentenced to a $1,000 fine and $300 in fees, to be paid in installments, and two years' probation. *Id.* The terms of probation also required that the defendant complete alcohol or substance abuse treatment. *Id.* The State alleged that the defendant had absconded by failing to comply with the conditions of his probation requiring completion of a drug and alcohol program and payment of the fines and fees. *Id.*

The court determined that to abscond from supervision, "a defendant must evade the legal process of a court by fleeing, hiding himself, or making some conscious effort to avoid custody or supervision." *Id.* at 961. "A showing that a defendant has failed to complete an alcohol and drug evaluation or failed to make payments on court-ordered fines and fees does not establish that the defendant has fled, is hiding himself, or is making a conscious effort to avoid custody or supervision." *Id.* Because the defendant was not required to report to any supervisory authority as part of his probation, the court found that the evidence that he had failed to pay fees and complete drug treatment was insufficient to establish that he had absconded from supervision. *Id.* at 962.

We find Mr. Miller's probation violations in this case substantially similar to those presented in *Ford*. Here, there was no requirement that Mr. Miller report regularly to the Bureau as a condition of probation and no allegation that he failed to report. Similarly,

11

there was no evidence that Mr. Miller concealed himself from the supervision of the Bureau or that the Bureau was unable to locate him or ascertain his level of compliance with his obligations.

The legislative history and intent of the JRA convince us that the evidence of "willful evasion" required to support a finding of absconding, and so bypass the sentencing limitations of the JRA, requires more than evidence of a compliance violation. Mr. Miller's failure to comply with his probation requirements that he make payments and submit job applications to the Bureau did not show willful evasion of the supervision of the Bureau. Accordingly, the circuit court erred in finding that his actions constituted the non-technical violation of absconding and in imposing a sentence beyond the presumptive limit set forth in § 6-223(d) of the Criminal Procedure Article without making a finding that the presumptive limit would create a risk to public safety, a victim, or a witness. We will therefore vacate Mr. Miller's sentence and remand for resentencing consistent with this opinion.

**SENTENCE VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR RESENTENCING. COSTS TO BE PAID BY WICOMICO COUNTY.**