IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,863

STATE OF KANSAS,
*Appellee*,

v.

ARCHIE JOSEPH PATRICK DOOLEY,
*Appellant*.

SYLLABUS BY THE COURT

1.

In determining whether a probationer has absconded under K.S.A. 2013 Supp. 22-3716(c)(8), the purpose behind the probationer's actions is the key element.

2.

If a violator's actions demonstrate an intent to evade probation supervision because the probationer hid or secretly left the jurisdiction or because a pattern of violations permits the inference that the probationer is intentionally evading the legal process, then the probationer has absconded from supervision.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 22, 2019. Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed July 23, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Ryan J. Eddinger,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

1

*Kristafer R. Ailslieger,* deputy attorney general, argued the cause, and *Amanda G. Voth*, chief deputy county attorney, *Gregory T. Benefiel*, county attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

PER CURIAM: On review of a decision by the Kansas Court of Appeals, Archie Dooley appeals from the revocation of his probation and the imposition of an incarceration term of 120 months. Finding no error by the district court or the Court of Appeals, we affirm.

FACTS AND PROCEDURAL BACKGROUND

On March 15, 2012, Dooley entered into a plea agreement for failing to register as an offender under K.S.A. 2011 Supp. 22-4904(b), a severity level 5 person felony. On August 31, 2012, the district court sentenced him to a prison term of 120 months but granted him probation for a period of 36 months. The terms of probation included successfully completing an intensive supervision program and that he would "keep all scheduled appointments" with his intensive supervision officer.

On November 6, 2012 and January 24, 2013, Dooley agreed to modifications of his probation requiring him to serve two- and five-day jail terms as sanctions for changing his residence without permission. Then, on March 5, 2013, the State filed a motion to revoke Dooley's probation, alleging he violated his probation by failing to report, moving without permission, and using drugs. The district court revoked and then reinstated Dooley's probation with the additional conditions that he serve a 30-day sanction in county jail and enter a halfway house upon completion of his sanction. The district court also ordered Dooley to successfully complete the community corrections

2

intensive supervision program. Later, on August 5, 2013, Dooley agreed to a modification of his probation requiring him to serve a two-day jail sanction for consuming illegal drugs on August 1, 2013.

On December 17, 2013, the State filed a second motion to revoke Dooley's probation. The State alleged the following violations: (1) On June 6, 2013, Dooley admitted using opiates and signed a voluntary admission form; (2) on July 8, 2013, he admitted to using Adderall that was not prescribed; (3) on July 15, 2013, he tested positive for and admitted using methamphetamine and opiates; (4) on July 18, 2013, he tested positive for and admitted using methamphetamine and opiates; (5) on August 26, 2013, he admitted using methamphetamine and Xanax and signed a voluntary admission form; (6) on December 6, 2013, he failed to report to his intake meeting with community corrections; (7) he failed to enter Oxford House (a halfway house); and (8) he failed to report his whereabouts and failed to report to community corrections, "having apparently absconded," and his whereabouts were unknown at the time. On January 14, 2014, a bench warrant was issued and was served upon Dooley.

The district court revoked Dooley's probation and ordered him to serve his original prison sentence. The journal entry of the hearing provided the following description of the violations: "Defendant admitted usage of Amphetamines, Defendant admitted usage of Methamphetamine, admitted usage of Opiates, admitted usage of Adderall, admitted usage to [*sic*] Xanax, failure to report to Oxford House in Dodge City, KS, failure to report to Dodge City Community Corrections; defendant absconded." The journal entry form contains a preprinted check box that read: "Court revoked pursuant to K.S.A. 2013 Supp. 22-3716(c)(8) or (c)(9)—state reasons in comment box." The district court did not check this box and did not state any reasons in the comment box as to why the court was bypassing intermediate sanctions.

3

Dooley took an appeal to the Court of Appeals, which held that K.S.A. 2013 Supp. 22-3716 allows a district court to bypass intermediate sanctions when a defendant absconds from supervision while on probation. The panel recognized that the district court did not explicitly state at the hearing it was revoking probation because Dooley was an absconder, but the panel noted that the district court had accepted Dooley's stipulation that he was an absconder on the record, and the journal entry of the hearing stated that Dooley's probation was being revoked in part because he was an absconder. *State v. Dooley*, No. 111,554, 2016 WL 1545172 (Kan. App. 2016) (unpublished opinion).

We then granted Dooley's petition for review. We affirmed in part and reversed in part the district court's ruling that Dooley violated the terms of his probation and remanded for further proceedings the revocation of probation and imposition of the original underlying sentence. On remand, we directed the district court either to impose an intermediate sanction under K.S.A. 2013 Supp. 22-3716(c)(1)(C) or (D), or to bypass the intermediate sanction under K.S.A. 2013 Supp. 22-3716(c)(8) based on a finding, supported by substantial competent evidence, that Dooley absconded from supervision. *State v. Dooley*, 308 Kan. 641, 658, 423 P.3d 469 (2018) (*Dooley I*).

At the evidentiary hearing on remand, Dooley testified about the circumstances of his initial failure to report to his officer. He told the court he did not leave the state of Kansas or Dodge City and he was not hiding from police or corrections officers. He was living in a homeless shelter or a truck-stop hotel in Dodge City during the time he was required to report. On cross-examination, he acknowledged that he had earlier admitted he had absconded.

4

Part of Dooley's reintegration plan involved moving him into a halfway house for continued care. He testified he attempted to gain admission to the halfway facility, the Oxford House, but he only had $200, and the facility had an admission fee of $250. He told the court he "got scared" and did not report to a scheduled meeting with his officer. He said that, although he "intentionally" did not report, he "was hoping to get some help" with the financial requirements. When he received no help, he turned himself in by going to the corrections office. He turned himself in approximately one month after the meeting that he missed. He only missed one meeting, and he was not aware there was a warrant for his arrest.

Dooley's intensive supervision officer testified that she made "numerous" attempts to contact him at the Oxford House, but she was unable to reach him because he never took up residence there. Finally, on December 12, 2013, the officer contacted Dooley's girlfriend and warned her that, if Dooley failed to report, she would initiate issuing a warrant. Dooley testified his girlfriend did not tell him about this contact. On December 17, a warrant was issued. He finally showed up, unscheduled, on January 10, 2014. He testified he was unaware that a warrant had been issued, although he suspected there was one. He turned himself in because he "wanted to talk to corrections to find out what was going on and see where we was at."

The district court held that the evidence showed Dooley had absconded. The court revoked his probation and ordered him to serve his underlying sentence. Dooley took a timely appeal to the Court of Appeals.

A divided Court of Appeals affirmed the imposition of incarceration in *State v. Dooley*, No. 120,863, 2019 WL 6223343 (Kan. App. 2019) (unpublished opinion). This court granted Dooley's petition for review.

5

Under K.S.A. 2013 Supp. 22-3716, a district court is directed to impose intermediate penalties for probation violations. A district court may skip the intermediate penalties if the probationer absconds. The question before the district court on remand, and the Court of Appeals, is whether Dooley's failure to report to his supervision officer and failure to provide an address where he could be served sufficed to constitute absconding, when he voluntarily turned himself in about a month later.

As in *Dooley I*, the court is tasked with construing a statute, and interpretation of a statute is a question of law subject to unlimited review. *Dooley I*, 308 Kan. at 646-47. We will also consider whether the evidence supported a determination that Dooley absconded, making this a mixed question of fact and law. When an appellate court reviews such mixed questions, it applies a bifurcated standard of review. Insofar as the factual findings are in dispute, the court applies a substantial competent evidence standard. In determining whether substantial competent evidence supports the district court findings, appellate courts disregard any conflicting evidence or other inferences that might be drawn from the evidence. The conclusions of law based on those findings are subject to unlimited review. See *Gannon v. State*, 303 Kan. 682, 699-700, 368 P.3d 1024 (2016).

We summarized the statutory scheme relating to intermediate penalties in our first review of Dooley's case:

"With its 2013 amendments to K.S.A. 22-3716, the Legislature established a graduated sanctioning scheme for probationers who violate the terms of their probation

6

release, whereby first-time and second-time violators are ordinarily subject to intermediate sanctions, short of a complete probation revocation and the imposition of their original underlying prison term.

"The progression of graduated intermediate incarceration sanctions pursuant to K.S.A. 2013 Supp. 22-3716 is: (1) a confinement in jail of not more than 6 days per month in any 3 separate months during the probation term, not to exceed 18 days of total confinement and imposed in 2-day or 3-day consecutive periods; (2) a prison sanction of 120 days, which may be imposed once during the probation term; (3) a prison sanction of 180 days, which may be imposed once during the probation term; and (4) revocation of probation and the imposition of the original sentence or a lesser sentence.

"If a probationer absconds from supervision during the probation term, K.S.A. 2013 Supp. 22-3716(c)(8) authorizes the district court to bypass the graduated intermediate sanctions steps and proceed directly to revocation under K.S.A. 2013 Supp. 22-3716(c)(1)(E). The State must allege and prove by a preponderance of the evidence that the probationer absconded from supervision, and the district court must make the finding that the probationer absconded from supervision in order to invoke that exception to the intermediate sanctions." *Dooley I*, 308 Kan. 641, Syl. ¶¶ 1, 2, 3.

Also in *Dooley I*, we identified standards to be applied in determining whether a probationer has absconded in the sense that the Legislature intended for avoiding intermediate sanctions. We turned for guidance to the construction of the word that the Oregon Supreme Court set out in *State v. Robbins*, 345 Or. 28, 36, 188 P.3d 262 (2008), which considered similar statutory language:

"'The words used to define 'abscond' all refer to some kind of conduct that a person engages in with a particular intent—'depart secretly,' 'withdraw . . . oneself,' 'hide oneself,' 'evade,' 'avoid.' *For a person to 'abscond,' then, it is not sufficient that the person simply engage in some course of action (or inaction); the person must do so with the*

7

*conscious intent to hide from or otherwise evade legal process.*' (Emphasis added.) *Robbins*, 345 Or. at 33.

"*Robbins* recognized that 'failure to comply with the supervision requirements of probation may justify a determination that a defendant has absconded.' 345 Or. at 36. But the court also noted that the definition of 'abscond' showed that the purpose behind the defendant's actions are key. If a violator's acts show intent 'to evade probation supervision because the defendant hid or secretly left the jurisdiction or because a pattern of violations permits the inference that the defendant is intentionally evading the legal process,' then the defendant has absconded from supervision. 345 Or. at 37.

"We are persuaded to adopt that concept with respect to the phrase 'absconds from supervision' in K.S.A. 2013 Supp. 22-3716(c)(8). Relying on ordinary dictionary meanings, the State must show that the probation violator engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process. 345 Or. at 33. Evading the legal process of the court includes the offender's conduct in intentionally avoiding probation supervision, for example, by intentionally avoiding detection by one's probation officer. In determining whether an offender has 'abscond[ed] from supervision,' district courts must consider whether the offender's

'acts show the intent that inheres in the definitions of "abscond"—not simply that the [offender] failed to attend one meeting with a probation officer or could not be located for a brief period of time, but that the [offender] sought to "evade the legal process of a court by hiding within or secretly leaving the jurisdiction. "' 345 Or. at 36 (quoting Webster's Third New Int'l Dictionary 6)." *Dooley*, 308 Kan. at 657.

In the present appeal, Dooley argues his conduct does not rise to the level of absconding under the *Dooley I* standards. He points out that he only missed one meeting with his supervising officer, he did not leave Dodge City or actively avoid contact with law enforcement, and he turned himself in to authorities within a month of his required

8

reporting session. He suggests this violation was of the minimal nature that the statutory provision for intermediate sanctions is intended to address.

While we agree that the evidence does not show multiple missed meetings or an overt attempt to hide, we take notice of the *Dooley I* language quoted from *Robbins*: "If a violator's acts show intent 'to evade probation supervision because the defendant hid or secretly left the jurisdiction *or because a pattern of violations permits the inference that the defendant is intentionally evading the legal process*,' then the defendant has absconded from supervision.'" (Emphasis added.) 308 Kan. at 657.

The State's evidence that Dooley failed to enter Oxford House, failed to report his whereabouts, and failed to appear for his scheduled intake meeting with community corrections provides substantial competent evidence supporting the district court's finding that Dooley acted with conscious intent to evade the legal process. In turn, this finding lends adequate support to the district court's legal conclusion that Dooley absconded. Dooley's conduct demonstrated a pattern of violations from which we can infer that he intentionally evaded the legal process. He did not neglect or overlook his scheduled meeting; he deliberately avoided it because he was afraid of going to prison. He did not tell his supervising officer where he was living or provide notice of changes in his address. He did not check into the halfway house as he was required to do; instead of seeking assistance from his supervising officer, he moved into quarters where law enforcement would have no reason to be looking.

These circumstances individually might not have sufficed to demonstrate he was an absconder. Collectively, however, they constituted a pattern of violations all consistent with his admitted intent to evade his court-ordered probation conditions. As we stated in *Dooley I*, "the State must show that the probation violator engaged in some course of

9

action (or inaction) with the conscious intent to hide from or otherwise evade the legal process." 308 Kan. at 657.

CONCLUSION

We therefore conclude that the district court did not err in revoking Dooley's probation. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

\* \* \*

ROSEN, J., dissenting:  I agree with and would adopt Judge Atcheson's well-reasoned dissent. I offer some additional observations about the purpose and application of intermediate sanctions under K.S.A. 2013 Supp. 22-3716.

By adopting the graduated intermediate sanctions scheme, the Legislature expressed the strong purpose of reforming probation and sentencing standards "'with an eye toward alleviating both prison overcrowding and extended incarceration of defendants amenable to lesser sanctions.'" *State v. Clapp*, 308 Kan. 976, 986, 425 P.3d 605 (2018) (quoting *State v. Clutchey*, No. 114566, 2016 WL 7178260, at \*2 [Kan. App. 2016] [unpublished opinion]). The Legislature, in essence, gave legal effect to Keith Richards' and Mick Jagger's words in the Rolling Stones classic tune "The Last Time":  "Well I told you once and I told you twice, but you never listen to my advice. You don't try very hard to please me, with what you know it should be easy. Well, this could be the last time . . . ." The Rolling Stones, The Last Time on Out of Our Heads (RCA Studios 1965).

10

Allowing second chances is inherent to the human condition. Whether it be reflected in rock-and-roll lyrics or adopted by our Legislature as a requirement when considering sanctions upon a second probation revocation, giving the opportunity to change behavior after an initial failure recognizes that mandated change is often difficult and complex. The majority in this case opts to apply the facts of this case to the statutory language in such a way as to defeat that legislative intent.

In *Dooley I*, we noted that a single act of failing to report to a probation officer or a law enforcement officer's inability to locate the probationer for a brief period of time does not turn a probationer into an absconder. *Dooley I*, 308 Kan. at 657. But that is exactly what we have in the case before us. It is true that law enforcement could not immediately locate Dooley, but that was only for a short time; he surrendered himself within a month of his missed meeting. Furthermore, the failure to locate him was because he missed his meeting. He attempted to comply with the requirement that he check into a halfway house; when that attempt was unsuccessful, he lived elsewhere, not because he was hiding or attempting to evade capture, but because he had no place to live.

The entire "pattern" of evasive conduct cited to by the majority really boils down to one act:  Dooley failed to report to his supervising officer. I will not apply multipliers to that single act by counting its consequences as acts of absconding—the principal one being that Dooley's supervising officer never learned Dooley could not gain admission to the halfway house or where Dooley was living so, for a short time, was unable to find him by means of some routine investigation.

11

This seems to represent exactly the kind of situation that the Legislature had in mind when it established a mechanism for imposing intermediate sanctions. While I appreciate the frustration and challenges that individuals such as Dooley present to our judges, our court services, and our community corrections officers, Dooley nonetheless should have been afforded the statutorily mandated opportunities the Legislature has created to assist probationers' compliance with court required conditions. By simply following the legislative intent of our graduated sanctions statute, perhaps both the State and Dooley could have avoided the burden of an unnecessary and lengthy incarceration that was imposed solely because Dooley failed to make the initial intake contact with his community corrections officer.