NOT DESIGNATED FOR PUBLICATION

No. 124,387

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KACEY CHIEF ELIAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed
November 23, 2022. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before HURST, P.J., HILL and ATCHESON, JJ.

PER CURIAM: Kacey Chief Elias appeals the district court's decision to revoke his
probation and impose his underlying 44-month prison sentence. Elias argues that the
district court abused its discretion by: (1) erroneously finding it had previously imposed a
three-day sanction; (2) failing to properly invoke the absconder exception; (3) failing to
make particularized findings under the public safety exception; and (4) making an
arbitrary, fanciful, and unreasonable decision. Although Elias makes several thoughtful

1

arguments—the district court did enough to invoke the absconder bypass exception when it revoked Elias' probation—and the district court's decision is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2020, Elias pled no contest to two counts of felony aggravated battery. At sentencing, the district court followed the recommendations of the parties and ordered Elias to serve 36 months of probation with 44 months' underlying prison sentence. The court also ordered Elias to pay $1,567.27 in restitution to his victims.

Just two months after sentencing, in January 2021 Elias' probation officer filed an order to arrest and detain him for violating the terms of his probation. Rather than having a probation violation hearing, Elias signed a hearing waiver and admitted the allegations that he had possessed drugs and failed a drug test. Elias also accepted the community correctional services director's decision to impose an intermediate sanction of three days in the county jail for his admitted probation violations.

Three months after serving his three-day sanction, the State issued a warrant for Elias' arrest based on ten new alleged probation violations. The State issued another warrant in July and alleged Elias had committed a new crime while on probation and had absconded and failed to report to supervision for nearly four months.

The district court held a probation violation hearing in September 2021 where Elias stipulated to several of the violations, including:

(1) possessing drugs without a prescription;
(2) testing positive for methamphetamine;
(3) admitting that if tested, he would be positive for ecstasy and marijuana;
(4) failing to complete outpatient treatment;

2

(5) failing to obtain employment;

(6) failing to make payments on his court costs and restitution; and

(7) absconding from supervision and failing to report to his probation officer for the prior four months.

The district court specifically told Elias that one of the allegations was that "you failed to report to your probation officer since March 23rd of this year and had absconded from supervision since that time" and asked Elias, "Is that true?" Elias then took a moment to confer with his attorney and responded, "Yes, sir." The district court acknowledged Elias' waiver of his right to an evidentiary hearing and found that, based on Elias' stipulations, he had violated his probation by committing "Allegations 1 through 5 and 9 and 10 in the April 1st, 2021 warrant, and Allegation 3 in the July 29th warrant," and then "tabled and set aside" the other violations—including Elias' alleged commission of a new crime.

Elias' probation officer recommended that the court revoke Elias' probation and impose his underlying sentence because he had proven unamenable to probation. The court questioned Elias about his whereabouts during the four months that he had failed to report to supervision. Elias replied that he had been homeless and "scared of court sanctions and . . . unsure in how to handle the situation." Elias explained that he had left his mother's house—where he was ordered to stay by the court—due to an argument. Again, the court asked why Elias stopped reporting to his probation officer, and Elias replied that he "didn't have the stuff [he] needed done, and [he] didn't know for sure if [he] was going to get sanctioned. [He] was scared that [he'd] keep coming back to jail and deal with sanctions . . . ." He explained that once he left his mother's home, "I got scared, you know, and I just—I missed a lot of the stuff, and I—I just kind of disappeared for a little bit. I didn't disappear. I just been trying to stay out of the way, Your Honor. I just got scared. That's all." Elias requested the court continue his probation so that he could seek "more rigorous treatment."

3

The court then addressed Elias directly in announcing its ruling:

"[T]oday you're asking for resources, but you've been given resources, Mr. Elias. You've been given significant resources, both through the outpatient and inpatient opportunity. And it sounds like you're behaving horribly again while you were in the inpatient just on what's set forth in that report.

"And clearly, that was not a substance abuse problem while you were in inpatient with how you were behaving. It was just you being a bad guy.

. . . .

"The bigger problem for you, Mr. Elias, is I don't care whether you're scared or not. You don't just get to go off the grid and quit reporting for four months for whatever reason. The whole point of probation is that you're supervised.

"And you know what? You are a danger to others. You've shown that in these offenses. Your substance abuse issues, both alcohol and drug-related, are concerning. They were concerning back at the time of your sentencing. They're concerning now. You were given resources to try and address those, and you haven't taken advantage of those resources. . . .

. . . .

"So now we're here, and there is no indication or optimism I have that if you were placed back on probation that you would be able to comply when you had a fairly big failure on this probation to date.

"So when the question is, is there a basis to reinstate you on probation or not, I can't see that there is a basis.

"So you've served a prior quick dip at my order. You have now failed and been unsupervised for a lengthy period of time, so I don't see a basis to reinstate your probation, Mr. Elias. So I'm going to revoke that probation, and I'm going to impose your sentence."

In the journal entry of the revocation hearing, the court noted that Elias' probation was revoked per K.S.A. 22-3716(c)(7) because he had absconded and was a threat to public safety. The district court then explained that it found Elias to be "a danger to community because underlying offense was violent."

4

Elias appeals.

## DISCUSSION

Elias argues that the district court abused its discretion in revoking his probation and imposing his underlying prison sentence because: (1) The court relied on an error of fact when it found that he had previously served a court-ordered three-day jail sanction; (2) the court committed an error of law in imposing his original sentence without having first ordered an intermediate sanction; (3) the court failed to properly invoke either the public safety or absconder exceptions to avoid imposing an intermediate sanction; and (4) the court's decision was arbitrary, fanciful, and unreasonable. While Elias argues the district court reached an incorrect disposition, he does not challenge the court's finding that he violated the terms of his probation.

This court reviews the district court's decision to revoke Elias' probation for an abuse of discretion. See *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). An abuse of discretion can occur if the decision is (1) based on an error of fact; (2) based on an error of law; or (3) is arbitrary, fanciful, or unreasonable so that no reasonable person would agree. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Elias bears the burden of showing the district court abused its discretion in revoking his probation. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

The district court was constrained by the probation revocation statutory framework that required certain conditions be met prior to revoking a defendant's probation. See K.S.A. 2019 Supp. 22-3716. This court applies the 2019 statutory version because the events supporting Elias' underlying convictions occurred on June 9, 2020. See K.S.A. 2019 Supp. 22-3716(c); *State v. Coleman*, 311 Kan. 332, 337, 460 P.3d 828 (2020). The relevant statute gave the district court discretion to revoke a defendant's probation and impose the underlying sentence if the probationer had already received at least one

5

intermediate jail sanction. K.S.A. 2019 Supp. 22-3716(c)(1)(C). However, certain exceptions also permitted a court to bypass that intermediate sanction step, including when "[t]he court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized" or when "the offender absconds from supervision while the offender is on probation." K.S.A. 2019 Supp. 22-3716(c)(7)(A), (D).

Thus, before revoking Elias' probation, the district court was required to impose an intermediate sanction unless it relied on a statutory bypass. See K.S.A. 2019 Supp. 22-3716(c). Therefore, if the district court properly relied on a statutory bypass to revoke Elias' probation—then Elias' remaining arguments are immaterial, and this court's review ends. In its journal entry, the district court identified both absconding and public safety as two exceptions permitting it to revoke Elias' probation without first ordering intermediate sanctions.

The district court has discretion to revoke an offender's probation without first imposing intermediate sanctions if "the offender absconds from supervision while . . . on probation." K.S.A. 2019 Supp. 22-3716(c)(7)(D). Unlike the public safety and offender welfare exception, the absconder statutory exception does not contain a particularized findings requirement. Cf. K.S.A. 2019 Supp. 22-3716(c)(7)(A) with K.S.A. 2019 Supp. 22-3716(c)(7)(D). However, the Kansas Supreme Court has held the district court must make a *specific* finding that the defendant absconded from supervision before invoking the exception. See *State v. Dooley*, 313 Kan. 815, 820, 491 P.3d 1250 (2021); *State v. Dooley*, 308 Kan. 641, 654, 423 P.3d 469 (2018). The district court must explicitly find that the defendant's action/inaction or pattern of violations, and the inferences derived therefrom, show an intent to hide from or otherwise evade probation supervision and the legal process. See *Dooley*, 313 Kan. at 820; *Dooley*, 308 Kan. at 657. Elias claims the district court erred because it never made such a specific finding at the revocation hearing

6

that he absconded, and the journal entry is the only evidence that the court relied on the absconder exception.

The State did not present evidence on the issue of whether Elias absconded because Elias stipulated that he failed to report to probation and had absconded. After Elias had been unsuccessfully discharged from his mandated inpatient treatment, his court services officer reported that he made no further contact with anyone from court services. The district court specifically addressed Elias about the State's allegation that he had "absconded from supervision," and after conferring with his attorney, Elias stipulated to absconding as stated in the July 29 warrant. However, "[a]bsconding is more than just not reporting." *State v. Huckey*, 51 Kan. App. 2d 451, 456, 348 P.3d 997 (2015).

Elias did not merely stipulate to absconding, he also testified that by not reporting to his probation officer as required he intended to evade detection and sanctions. The district court asked Elias why he had failed to report to his probation and avoided all supervision for the prior four months, and Elias explained that he had been homeless and stopped reporting because he "was scared of court sanctions and was unsure in how to handle the situation." Elias said that he had moved out of his mother's house without approval from his probation officer, and that he had avoided reporting because he knew that he had not complied with the conditions of his probation and did not want to be sanctioned. The district court replied: "[F]or the last four months, you've been doing nothing that's required . . . by probation, and we have no idea what's been going on, because you've been unsupervised. You couldn't even make a phone call or come down to the probation office."

In making its decision to revoke probation, the court addressed Elias' explanation for his avoidance of supervision, noting that being worried about sanctions was not a valid reason to stop reporting. Not only did Elias, immediately after conferring with his attorney, admit to absconding—his testimony demonstrates a pattern of actions from

7

which this court may infer that he intentionally evaded the legal process. Similar to the defendant in *Dooley*, Elias did not merely neglect or overlook his scheduled meetings and supervision; he deliberately avoided the conditions of his probation because he was worried about the consequences of his prior violations. See *Dooley*, 313 Kan. at 821.

While the district court could have more thoroughly explained why it found that Elias had absconded, the hearing testimony combined with Elias' stipulation—immediately after conferring with his counsel—coupled with the district court's journal entry noting that it found Elias had absconded, all demonstrate that the district court specifically found that Elias engaged in actions "with the conscious intent to hide from or otherwise evade the legal process." See *Dooley*, 308 Kan. at 657. As such, the district court did not abuse its discretion in ordering Elias to serve his underlying prison term under K.S.A. 2019 Supp. 22-3716(c)(7)(D), even if it had not previously imposed intermediate sanctions.

The district court also marked the public safety bypass exception for revoking Elias' probation, which requires a court to find and set forth "with particularity the reasons" why public safety would be jeopardized by imposing an intermediate sanction. K.S.A. 2019 Supp. 22-3716(c)(7)(A). Elias argues the district court's decision lacked the particularity required to properly invoke the public safety exception. However, having found that the district court properly relied on the absconding exception permitting it to revoke Elias' probation without first imposing an intermediate sanction—there is no need to address Elias' argument that the district court failed to properly invoke the public safety bypass exception. Additionally, this court need not address Elias' argument that the district court made an error of fact and law when it determined it had previously imposed an intermediate jail sanction.

In his final argument, Elias contends that the district court's decision to revoke his probation was arbitrary because it "did not benefit [himself] or the community." Elias

asserts that his drug abuse and homelessness were not served by ordering him to serve his underlying sentence at taxpayers' expense rather than granting him another chance to continue his probation. However, because the district court properly invoked the absconder bypass provision in revoking his probation, it cannot be said that the district court's decision was arbitrary, fanciful, or unreasonable.

CONCLUSION

Elias contends that the district court erred in multiple ways by revoking his probation without first imposing an intermediate sanction. However, the district court properly relied on the absconder bypass exception permitting revocation of Elias' probation, even if it did not first impose an intermediate sanction, so none of Elias' other arguments are addressed by this court. The district court's decision to revoke Elias' probation is affirmed.

Affirmed.