NOT DESIGNATED FOR PUBLICATION

No. 125,493

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SARAH D. HARRISON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; KEITH L. COLLETT, judge. Submitted without oral argument. Opinion filed April 5, 2024. Affirmed.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Krista L. Blaisdell*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., GREEN and PICKERING, JJ.

PICKERING, J.:  This is an appeal based on the district court revoking Sarah D. Harrison's probation and imposing her underlying prison term. On appeal she challenges the evidence supporting the finding that she stipulated to her other criminal convictions, that the district court did not make particularized findings that she would not be served by an intermediate sanction, and the district court erred in revoking her probation. Having reviewed the record, we are not persuaded by her arguments and affirm the district court's ruling that revoked her probation.

1

On August 3, 2020, in Geary County, Harrison pled nolo contendere to one count of nonresidential burglary committed in October 2019, a severity level 7 nonperson felony, and one count of theft committed in January 2020, a severity level 9 nonperson felony.

On March 1, 2021, Harrison was sentenced for the nonresidential burglary conviction to presumptive probation for 24 months with an underlying prison term of 27 months and was sentenced for the theft conviction to a concurrent presumptive probation term of 24 months with an underlying 6-month prison term. That same day of her sentencing, she was released from jail and began serving her 24 months of probation. One of her probation terms was that she report to her probation officer (officially titled an Intensive Supervision Officer [ISO]) once she was released from jail. She, however, failed to do so.

On April 26, 2021, the State moved to revoke Harrison's probation for failing to report. The probation officer's affidavit that was introduced at the revocation hearing outlined Harrison's reporting obligations and the efforts the probation officer made to reach Harrison. The officer's affidavit outlined how Harrison had repeatedly failed to report. He also described how, after much effort, he was finally able to contact Harrison and scheduled a new appointment. However, Harrison, who by then was living in Wichita, did not keep the scheduled appointment.

Due to Harrison's failure to report, the officer recommended Harrison serve a 15-day jail sanction, with 2 days counting as a "DIP," and that her probation be extended an additional 24 months. Several months after her March 1, 2021 jail release, on August 17, 2021, Harrison was arrested. At the August 23, 2021 probation violation hearing, the

district court found sufficient evidence to extend Harrison's probation for 24 months and ordered her to serve a quick dip of 2 days and a jail sanction of 15 days.

On November 5, 2021, the State again moved to revoke Harrison's probation. The probation officer prepared an affidavit, which again alleged Harrison had failed to report to her new probation officer at the Marion County Community Corrections office. The new probation officer, ISO Joseph Forbes, contacted her by phone, but Harrison hung up on the ISO. He left a message at her voice mail to meet with him on September 24, 2021, but she failed to report into the community corrections office. With her repeated failure to report or return any of the officer's messages, an arrest warrant was issued, and Harrison was arrested on February 23, 2022. The State twice amended its motion to revoke Harrison's probation, in March and May 2022, adding the following allegations:

> "On 2/22/2022 Ms. Harrison was convicted in Butler County KS for 'Fleeing or Attempting to Elude an Officer-Reckless.['] Ms. Harrison was placed on probation with Community Corrections in Butler County for 12 months. Ms. Harrison has never reported police contact or the new conviction. . . .
>
>      . . . .
>
> "On 4/4/2022 Ms. Harrison was charged with Possession of Stolen Property a Level 9 Nonperson Felony, Fleeing or Attempting to Elude a Police Officer Level 9 Felony, and Driving While License Revoked Class B Misdemeanor. Please see complaint that is attached from [Cloud] County."

The probation officer recommended the court revoke Harrison's probation.

The district court held a probation violation hearing on June 2, 2022. Harrison's attorney notified the court that she believed Harrison was going to stipulate that she violated probation. When the court asked Harrison if she was agreeing she violated her probation, Harrison said, "Um, no, Your Honor," and explained that she had been at a shelter in Wichita, could not get ahold of her probation officer, and her number had

changed. The court asked Harrison if she was *not* stipulating to violating probation by failing to report, and Harrison responded she was not.

The district court then asked Harrison if she was denying that her Butler County conviction violated her probation, and Harrison responded, "Um, no sir, I'm not saying that at all." Harrison explained that she had been under a lot of stress after her son passed away and she felt she was being harassed by the police so that she would not get justice for her son. During the hearing, no one challenged whether Harrison was stipulating to the Butler County conviction. The State withdrew the third allegation regarding her Cloud County criminal case because the case was still pending.

During the probation revocation hearing, Forbes testified that he was Harrison's supervising officer with community corrections. He explained that Harrison's original supervising officer was ISO Ronna Larson in Geary County, and the case was then transferred to him in Marion County. Forbes confirmed that Harrison met with Larson the day she was released from jail, on August 30, 2021. He read into the record Larson's note regarding that meeting, during which Harrison said her mother had just died and asked to meet another day. Larson gave Harrison the supervisor's card with Forbes' name and the Marion County number written on it and directed Harrison to call by the end of the week to schedule an appointment.

On cross-examination, Forbes confirmed that when he received Harrison's case, he knew Harrison's mother had recently died and that Harrison was living in a homeless shelter in Wichita. Forbes explained that the case was not transferred to Sedgwick County because Harrison "was living in a shelter, and Sedgwick County will not accept supervision of clients that do not have a stable residence." He also explained that while Marion County is not in Wichita, Marion County "is the closest [c]ounty in the 8th Judicial District to Wichita." (Harrison's criminal case originated from Geary County, which is part of the 8th Judicial District.)

4

When Harrison did not call within a week of her release from jail, on September 2, 2021, Forbes called the number he was provided for Harrison but was unable to speak with her or to leave a message. He attempted to call her again on September 20, 2021; she answered, and he told her they needed to schedule an office visit but she hung up on him. On cross-examination, Forbes explained that Harrison "flat out, refused to schedule an appointment with me because she said her mother just passed away." He testified he tried to call her back, but the call went straight to voicemail. He left a message telling Harrison to report to the Marion County office on September 24, 2021, at 10:30 a.m. Forbes denied that Harrison appeared at the appointed time. He further denied that Harrison had contacted him by the probation revocation hearing date or that she had contacted anyone in the eighth judicial district's community corrections office because "normally if somebody contacts other members of our agency, they add notes into our system," but there were no additional notes.

Harrison testified that she was notified of her mother's death while waiting to be released from jail between August 23 and 30, 2021. And while in Texas for her mother's funeral, she learned that her son had passed away in Kansas. She explained that because she was in Texas at the time, "I had to turn right back around" and return to Kansas. She said that "[a]fter that day I talked to Mr. Forbes. I told him that I'm on my way back to Kansas because my son just passed away, which was September 24th." She later clarified that her son was injured on September 24, 2021; he passed away on September 26, 2021; and his funeral was held in late October 2021.

Harrison also testified she talked to a probation officer at Sedgwick County after her son's funeral on October 24th. She stated that the officer told her not to worry about reporting and if she could not get to the office by 4 p.m., the officer would talk to her the week after her son's funeral. Harrison stated her failure to report was due to lack of transportation because she was on foot and could not get to Marion County, and that is what she told the Sedgwick County officer. Harrison testified that she could not

5

remember the Sedgwick County officer's name, but that "it was a lady I was talking to because she would call me like every week." On cross-examination, Harrison confirmed that Larson told her to report to Marion County; Forbes spoke to her on September 20, 2021, about reporting in Marion County; but she nonetheless believed she was talking to a woman in Sedgwick County about probation.

The State recalled Forbes, who confirmed that the database for notes and entries in probation cases is statewide. As such, if Harrison spoke to a probation officer anywhere in the state, that officer would be able to enter information related to those conversations into the system, and Forbes would be able to see and review those notes. He testified that the only other notes in the system were from Butler County's ISO as it related to Harrison's February 2022 conviction in that county. Forbes also denied that Harrison told him she was out of state or she was returning to Kansas because of her son.

In explaining its decision to revoke Harrison's probation, the district court noted there was no record of anyone at the Sedgwick County probation office speaking to her and, although Harrison did not have a car to get to Marion County, there was no allegation that she did not have a phone or access to one. Additionally, the court expressed doubt that her mother's and son's deaths were related to the new conviction of fleeing or attempting to elude officers in Butler County. Based on her first revocation for failure to report, the new allegation that she failed to report, and the new escalated crime combined with her long criminal history, the court revoked Harrison's probation and ordered her to remain in custody to serve her prison sentence.

HARRISON CHALLENGES HER PROBATION VIOLATION

Harrison argues the district court abused its discretion by revoking her probation and ordering her to serve her underlying sentence when it could have instead reinstated her probation or modified her sentence.

6

There are two distinct stages in probation violations. First, there is a factual determination that the probationer violated a condition of probation. Second, there is a discretionary determination of the appropriate disposition in light of the proved violations. Revocation of probation is merely one of the available dispositions. *State v. Horton*, 308 Kan. 757, 760-61, 423 P.3d 548 (2018).

In the first stage, the State must establish that a probationer violated the terms of probation by a preponderance of the evidence. *State v. Dunham*, 58 Kan. App. 2d 519, 528, 472 P.3d 604 (2020). We review a district court's factual findings for substantial competent evidence. *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021). "'Substantial competent evidence is "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion."'" *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

In the second stage of the probation violation process, once a probation violation is established, a district court has discretion to revoke probation unless the court is otherwise limited by statute. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). A court has abused its discretion "if no reasonable person would have taken the court's position." *Dunham*, 58 Kan. App. 2d at 529. Likewise, we review "the propriety of the sanction for a probation violation imposed by the district court for an abuse of discretion." *Tafolla*, 315 Kan. at 328.

*The district court's finding that Harrison committed a new crime was supported by substantial competent evidence.*

First, Harrison alleges there was not substantial competent evidence that she stipulated to committing a new crime in Butler County. She admits that several times during the hearing, "the district court, and even Ms. Harrison's defense counsel, stated

7

that she had stipulated to committing a new crime" but nonetheless argues she did not affirmatively stipulate.

At the probation revocation hearing, Harrison did, after a few interruptions, stipulate to the new criminal conviction from Butler County. She did not stipulate to failing to report. The following exchange occurred:

"[THE COURT:] Um, your lawyer has told me that you want to waive your right to an evidentiary hearing today; is that true?

"THE DEFENDANT: Uh, yes, sir.

"THE COURT: I read to you, in a general way, what the State is alleging you've done to violate your probation. Do you agree that those—at least the first two were—were violations of your probation?

"THE DEFENDANT: Um, no, Your Honor, because I, um—when I was staying in Wichita, I was staying at a shelter because I didn't have a place to go. And my youngest son was staying with a foster parent, because I was trying to get at my housing and everything. Um, at that time when I was trying to report, um, I couldn't get a hold of my probation officer. So, that's where the confliction happened. Um, my number got changed. I had an old number, so that's why he couldn't get a hold of me.

"THE COURT: So, are you not stipulating that you violated your probation by not sh—by not reporting?

"THE DEFENDANT: Uh, no, sir, because I didn't have a vehicle at the time, and I couldn't drive all the way to Marion. So, that's the only reason. Also, that I was trying to tell him that I couldn't get there because I didn't have transportation.

"THE COURT: So, you're denying that you intentionally violated—you—you're denying that you failed to report.

"Uh, now, on that issue of the February 22 conviction, in Butler County, are you denying that that constitutes a revoca—or that—that constitutes a violation of your probation?

"THE DEFENDANT: Um, no, sir, I'm not saying that at all. Um, I just know after my son passed away, I was under a lot of stress, and when he passed away, it kind of, um, affected me, you know, in a way affected me a lot. And um, I think they just

8

didn't want me to get justice for my son, when he passed away. So, I felt that I was being harassed by the police."

When the district court then asked Harrison's counsel if she thought these statements were sufficient to justify the revocation, Harrison's counsel stated, "I think that does depend on the State, uh, whether they want to give up the first" allegation of failure to report "because she's saying she's not stipulating to that. So, it's up to the State whether they want to accept a partial stipulation." Later, the district court stated that Harrison had stipulated to the Butler County conviction. And Harrison's attorney did not correct the district court after it had referenced Harrison's stipulation. Nor did her attorney later attempt to correct the journal entry, which also stated that there had been a stipulation of committing a new crime.

Harrison argues that she answered in the negative when the district court asked if she was stipulating to violating probation. But we cannot ignore that Harrison's response went on to explain why she failed to report and did not implicate the new crime. Then, when the court asked Harrison if she was denying the Butler County conviction, she said, "[N]o, sir, I'm not saying that at all," indicating to the district court that she was stipulating to that allegation. As the State notes, when the stipulation to new crimes was referenced throughout the proceeding, neither Harrison nor her counsel objected in any manner.

Even if Harrison had not stipulated to the conviction, there is evidence on the record regarding the Butler County conviction. The district court asked Forbes, who was under oath, whether he had any record of the date of the Butler County incident. Forbes testified that the conviction was on February 22, 2022, and the case number was 21-CR-322. The State then notified the court that the affidavit of probable cause in that case was included in its amended motion to revoke probation, and the date of the crime was

November 4, 2021. Harrison did not raise issue with the court's consideration of the affidavit at that time.

Under K.S.A. 2019 Supp. 22-3716(b)(2), the court may consider "[r]elevant written statements made under oath" which are admitted with other evidence at the hearing. Forbes' affidavit reveals that the new crime arose when Harrison rented a car and failed to return it. The car rental company reported it as stolen, and Harrison was convicted of fleeing or attempting to elude officers who found her with the stolen car. Harrison later testified that after her son died, she did not have a vehicle and "what led to this is, you know, I had to rent a vehicle and get my son's body, you know, get them to get my son's body." Additionally, during the hearing the district court referenced Forbes' supplemental affidavit and Harrison's new criminal conviction.

Because Harrison's actions concerning her felony for fleeing or attempting to elude a police officer due to the stolen rental car and her son's death occurred *after* Harrison was granted probation, there was substantial competent evidence for the district court to conclude that Harrison's Butler County crime was committed while she was on probation.

*Harrison's argument regarding the district court's duty to inform fails.*

Harrison additionally asserts that the district court did not inform her of her absolute right to ask for an evidentiary hearing, that the burden would be on the State to prove a violation, or that stipulating and waiving an evidentiary hearing would result in a finding that she violated probation. Harrison cites no legal authority prescribing the contents of a district court's allocution in a probation revocation hearing.

Another panel of this court denied the necessity of similar requirements in *State v. Billings*, 30 Kan. App. 2d 236, 239, 39 P.3d 682 (2002). Prior to Billings' probation

revocation hearing, Billings' counsel advised the district court that Billings would "waive a hearing and stipulate that he had violated the terms of his probation." 30 Kan. App. 2d at 237. Billings confirmed to the court that his attorney's offers of waiver and stipulation were correct. The court then heard arguments and revoked Billings' probation.

On appeal, Billings argued the district court erred in failing to advise him of all his constitutional rights, including that he had a right to present evidence and cross-examine witnesses. The *Billings* panel found that K.S.A. 22-3716(b), which governs procedures for probation revocations, provides "adequate protection of the due process rights of a defendant by providing him or her with an attorney, who should advise as to the due process rights that apply," rendering it unnecessary for the district court to so inform the probationer. 30 Kan. App. 2d at 239.

The portion of K.S.A. 22-3716(b) giving rise to the minimum due process rights for probationers has remained unchanged since the hearing in *Billings*, though other portions of the probation revocation statute were amended. Compare K.S.A. 2000 Supp. 22-3716(b) to K.S.A. 22-3716(b). Thus, the logic in *Billings* is instructive. Harrison does not deny that she was given written notice of the allegations or evidence against her or that she was given the opportunity to be heard and to present evidence and witnesses, as is required under K.S.A. 2019 Supp. 22-3716(b)(2).

We thereby decline to extend the due process rights included in K.S.A. 2019 Supp. 22-3716(b) and find that the district court was not required to notify Harrison of the consequences of stipulating to a probation violation.

11

*The district court's ruling revoking Harrison's probation due to a new criminal conviction comports with K.S.A. 2019 Supp. 22-3716.*

At the end of the probation hearing, after hearing testimonial evidence from both parties, the district court stated that Harrison had stipulated to a new criminal conviction in Butler County. The court, after further discussion, ruled that Harrison's probation should be revoked: "I find, based on the first probation, which was failure to report and the second probation, which was failure to report and the escalating crime, combined with a long criminal history, that she is simply not amenable to probation." Here, under the phrase, "escalating crime," the district court referenced Harrison's new criminal conviction.

Also, the journal entry from the probation violation hearing stated the reasons for revoking Harrison's probation: (1) Harrison stipulated to failing to remain crime free (noting the new conviction listed in Forbes' supplemental affidavit); and (2) after hearing the State's evidence, the district court found Harrison had failed to report. The journal entry's "Comments" section listed that the district court found Harrison not amenable to probation; this was Harrison's second probation violation; and Harrison had committed a new crime in Butler County.

On appeal, Harrison challenges the court's ruling by arguing that because the district court's journal entry notation of revoking probation lists that her welfare would not be served by an intermediate sanction, it was required to set forth its reasoning with particularity. In support, Harrison relies on K.S.A. 2019 Supp. 22-3716(c)(7)(A), which states that the district court may revoke probation without having previously imposed a sanction if it "finds and sets forth with particularity . . . that the welfare of the offender will not be served by such sanction."

The State counters that a judge may bypass intermediate sanctions if the defendant commits a new felony or misdemeanor while on probation or, alternatively, that the court provided its reasoning for bypassing intermediate sanctions with sufficient particularity.

Harrison's argument ignores K.S.A. 2019 Supp. 22-3716(c)(7)(C), which provides the district court may revoke probation if "the offender commits a new felony or misdemeanor while the offender is on probation[.]" This subsection clarifies that a person's probation may be revoked if he or she commits a new crime, including a new misdemeanor. See *State v. McGill,* 51 Kan. App. 2d 92, 94, 340 P.3d 515 (2015) (stating "[I]f the inmate has committed 'a new felony or misdemeanor or abscond[ed] from supervision,' the court need not impose an intermediate sanction. K.S.A. 2013 Supp. 22-3716[c][8].").

Here, the district court correctly applied K.S.A. 2019 Supp. 22-3716(c)(7)(C). In the court's ruling at the probation revocation hearing, the court stated that Harrison stipulated to committing a new crime. In addition, the hearing's journal entry lists Harrison's new crime as a reason for revoking probation. As the State noted, the district court may bypass a sanction and revoke probation when a new crime—either a misdemeanor or a felony—is committed.

Harrison's argument that the district court was required to "set forth with particularity . . . that the welfare of the offender will not be served by [such] sanction," as dictated under K.S.A. 2019 Supp. 22-3716(c)(7)(A), ignores two other provisions that a violator's probation may be revoked if a new crime is committed or there has been a previous intermediate sanction. See K.S.A. 2019 Supp. 22-3716(c)(7)(C) and (c)(1)(C). In both its oral ruling and journal entry notation, the district court references Harrison's new criminal conviction, and that her probation has previously been revoked. She cannot ignore her new conviction nor the fact that the district court had previously imposed two intermediate sanctions. Thus, K.S.A. 2019 Supp. 22-3716(c)(7)(A) is inapplicable.

13

Finally, Harrison argues the district court erred in revoking her probation for failing to report because she was facing housing insecurity, her mother and son died in quick succession, and she was in another county with no transportation. She also asserts that she could not afford a phone because she had no income, though evidence to that effect was not presented at the hearing.

Once a probation violation is established, a district court has discretion to revoke probation unless the court is otherwise limited by statute. A court abuses its discretion if the judicial decision is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Tafolla*, 315 Kan. at 328. Here, Harrison bears the burden of proving such abuse of discretion. See 315 Kan. at 328.

At the probation violation hearing, Harrison blamed her failure to report on a lack of transportation. She testified, however, that she went to Texas for her mother's funeral and that she rented a car after her son died. On appeal, she argues she did not have funds to pay for her phone—an argument which was not raised at the hearing. This argument is also belied by her testimony that she called a probation officer in Sedgwick County, she had spoken by phone to the Sedgwick County officer several times, and she had spoken by phone with someone at the hospital to help pay for her son's funeral. Additionally, Harrison admitted that she was told to report to Marion County for probation and that she spoke to Forbes, who told her she needed an appointment in Marion County. Forbes testified there were no notes in the state-wide system for probation officers documenting any calls between Harrison and a Sedgwick County probation officer.

In this case, there was substantial competent evidence for the district court to conclude Harrison was not given permission to halt her reporting duties from August through November 2021. There was also substantial competent evidence for the district court to conclude that Harrison had access to a phone to be able to speak to Forbes but failed to call him and she was not given permission to halt her duty to report.

14

As discussed above, the district court may revoke a person's revocation if a new crime is committed or if the person has previously received intermediate sanctions. The district court was correct in finding that Harrison had violated her probation by committing a new crime and by failing to report for several months. Harrison's actions had shown that she was not amenable to probation. The district court did not abuse its discretion in revoking Harrison's probation.

Affirmed.